## DAVID M. SWAIN vs. BENJAMIN KNAPP.

### November 4, 1885.

**Maritime Law—Dissent by Part-Owner to Employment of Vessel— Use by other Part-Owner at his own Risk and Profit.**—S. and K. were part-owners of a vessel which they had employed for common profit, under the management of K. as master. S. commenced an action for an accounting, and for a sale of the boat and a division of the proceeds, and obtained an injunction enjoining K. from using the boat during the pendency of the action. This injunction was, on motion of K., modified so as to permit him to run the boat until the further order of the court, but forbidding him to contract any debts which might become a lien on the boat, or for which S. might be liable, unless paid out of the current earnings of the vessel. S. served a written notice on K., withdrawing from him all authority to represent him in the management of the boat, and forbidding him to contract any debts for running the same, and notifying him that he (S.) would resist the payment of any claims or demands incurred by K. either as master or part-owner. K. then took possession and ran the boat during the pendency of the action. *Held,* that this amounted to a notification of dissent on the part of S. to the employment of the vessel; that in such case the dissenting part-owner bears no part of the expense, and is not responsible for any part of the losses, and is not entitled to any share of the earnings, nor to compensation for the use of his fractional share of the vessel; but, according to the law of shipping, the vessel is employed wholly at the charge and risk, and for the profit, of the other part-owners.

**Same—Failure of Dissenting Part-Owner to require Security.**—This rule is not altered by the fact that the dissenting part-owner did not apply to the court, as he might have done, to require the other to give security for the safe return of the vessel.

**Account Stated—Evidence.**—Evidence considered, and *held* sufficient to justify a finding that there had been an "account stated" and final settlement between the parties, of the business of the boat for certain previous years.

After the decision of a former appeal in this action, (reported 32 Minn. 429,) affirming the judgment of the district court for Washington county, an accounting of the earnings and profits of the steamboat Jennie Hayes was had before a referee, as directed by the judgment. A question being made as to the years which the accounting should include, the plaintiff moved the district court for an order directing the referee to take the account for the years 1881, 1882, 1883, and 1884. On this motion testimony was taken, and an order made by *McCluer, J.,* confining the accounting to the year 1883. From this order the plaintiff appeals. Plaintiff was owner of one-third, and defendant of two-thirds of the steamboat in question.

*Fayette Marsh,* for appellant.

*Thompson & Manwaring, Clapp & Macartney,* and *Dike & Burdick,* for respondent..

MITCHELL, J. The plaintiff and defendant were part-owners of the steamer Jennie Hayes, which they had employed for their common profit during the navigation seasons of 1881, 1882, and 1883, under the management of defendant as master. The plaintiff, having become dissatisfied with the management of the business by defendant, brought this action, in the spring of 1884, for an accounting of the earnings of the boat for the three previous years, and for a sale of the vessel and a division of the proceeds, and for a temporary injunction restraining defendant from using the boat during the pendency of the action. The defendant in his answer, among other things, alleged a full and final settlement and account stated of the business of 1881 and 1882. A preliminary injunction was issued in accordance with the prayer of the complaint; but this was, on the 16th of April, on motion of defendant, modified so as to permit him to run the boat on certain waters until the further order of the court, but forbidding him from creating or contracting any debts or liabilities on account of the boat which might or could become a lien on the same, or upon which plaintiff might become liable, except the same be paid out of the current earnings of the boat. The plaintiff also served a written notice upon defendant, withdrawing from him any right, power, or authority to represent him (plaintiff) in the management of the boat or in conducting the business of the same, and requiring him to con-

tract no bills or liens against the boat or for running the same, and also notifying him that he would resist the payment of any such claims, demands, or expenses incurred by defendant, either as part-owner or master. The defendant then took possession of the boat, and ran it during the season of 1884.

On the 10th of July, 1884, judgment was rendered in favor of the plaintiff, ordering a sale of the boat, and appointing a referee to take an accounting, but leaving undetermined the issue as to whether there had been a settlement and accounting between the parties of the business of 1881 and 1882. On the same day defendant, having filed a *supersedeas* bond, took an appeal to this court, which affirmed the judgment on the 25th of November. 32 Minn. 429. Subsequently, on motion, plaintiff applied to the district court for an order directing the referee to take an accounting of the business of the boat for the years 1881 to 1884, inclusive. The court denied the motion, and from that decision plaintiff appeals.

The court refused the accounting for 1881 and 1882, for the reason that he found as a fact that the parties had already had a full and final accounting and settlement as alleged in the answer. He denied an accounting for 1884, upon the ground that under the facts the plaintiff was entitled neither to a share of the earnings nor to compensation for the use of his share of the vessel. In the interest of order, which is the first principle of the law, we cannot refrain, in passing, from referring to the very irregular practice adopted by counsel in taking a judgment appointing a referee to take an accounting, but leaving undetermined the very issue upon which the extent of the accounting depended, and then trying that issue on motion. But waiving this, and passing to the merits, we think the court below was correct on both points decided.

1. There was ample evidence tending to prove that after the business for 1882 had terminated, the parties, by appointment, got together and spent some three days in looking over the books and examining the accounts as to the earnings and expenses of the business for 1881 and 1882, and the individual accounts of both parties, and that they made out a statement of the entire business, upon which the minds of the parties met, and which both accepted as containing

a full, final, and correct account of the business up to that date, and there is no suggestion of any fraud or mistake. The fact that they did not make entries in the books showing the settlement, or pass receipts, is unimportant. It is sufficient to make an account stated, if it be examined and accepted as such by both parties, and this acceptance need not be in writing, or even expressed, but may be implied from circumstances; and if the parties accepted this account as a full and final statement of the business up to that date, it did not become any the less final from the fact that it included certain specified uncollected accounts receivable, which were reckoned in as a part of the profits of the business.

2. In considering the claim of plaintiff to a share of the earnings of the boat in 1884, or to compensation for the use of his fractional interest in it, if we were to apply the rules of law applicable to an ordinary tenancy in common of an indivisible chattel, it would be clear that the claim could not be sustained. In this case there was no destruction or conversion of the boat, or anything equivalent to a denial of the co-ownership rights of plaintiff; simply the usual and legitimate exercise of the right of use and enjoyment by one tenant in common, the other declining to join in such use. We apprehend no case can be found where one tenant in common in possession was held liable to his cotenant under such circumstances. And if we resort to the rules of a cotenancy as enlarged and modified by the maritime law, as applicable to the rights and liabilities of part-owners of vessels, (and these, we apprehend, must govern this case,) the same result follows. In view of the interest which the public have in the advancement of commerce through the employment of ships, and in order to secure their employment, but at the same time to protect the interests of all the part-owners, it has become a familiar rule of the law of shipping that the majority in value have authority to employ the ship "upon any probable design;" but that any dissenting owner may expressly notify his dissent to the others, and if he apply to a court of admiralty, the court will take a stipulation from the others for the safe return of the vessel, and allow it to proceed. So will a court of equity in cases not within the jurisdiction of admiralty. *Haly* v. *Goodson*, 2 Merivale, 77. In such case the dissent-

ing part-owner bears no part of the expense of the outfit, and is not entitled to any share of the earnings, *but the ship sails wholly at the charge and risk and for the profit of the others.*

In the present case the dissent of the plaintiff was notified in the most distinct manner, first by obtaining the process of the court enjoining defendant from using the boat at all, and then by serving on him notice withdrawing from him all authority to represent him in running the boat or managing its business, and forbidding him to contract any liabilities on account of it, either as master or part-owner, and notifying him that he would resist the payment of any such liabilities. Plaintiff could not have more clearly expressed a determination that the previous arrangement for running the boat for common profit should cease, and that thereafter he would not be responsible for any losses or expenses incurred or contracted in the employment of the boat by defendant. Thereafter the defendant ran the boat at his sole risk and expense, and, as a logical consequence, for his sole profit. It is true that in modifying the injunction the court exacted from defendant no security for the safe return of the vessel. It does not appear that the plaintiff demanded any, and if he saw fit not to insist on a right intended solely for his own security, that fact does not enhance his rights in the premises. The important and efficient fact remains that he expressly notified his dissent from the employment of the vessel, and refused to be responsible for any of the losses or expenses, and hence has no claim upon the earnings. The same rule which excludes him from participating in the earnings excludes him from compensation for the use of his share of the vessel, without regard to the issue of the enterprise. *The Marengo,* 1 Lowell, 52.

There is no force in the suggestion that plaintiff is entitled to a share in the earnings, because, by prosecuting an appeal in this action, defendant delayed the sale of the boat and a distribution of the proceeds. If he has sustained any injury on this account for which he is entitled to damages,—a point we do not consider,—his remedy is on the appeal-bond.

Order affirmed.