# ALBERT W. LENTZ v. J. E. PEARSON.[1]

January 13, 1956.

No. 36,682.

[1]Reported in 74 N. W. (2d) 662.

146

*Christensen & Johnson* and *Desmond F. Pratt,* for appellant.

*L. G. Fassett* and *C. C. Luetke,* for respondent.

DELL, CHIEF JUSTICE.

Appeal from an order of the District Court of Hennepin County denying plaintiff's motion for amended findings or a new trial.

After discussions extending over a long period plaintiff and defendant, on January 2, 1948, entered into a partnership agreement in writing under the trade name of "Park Studio." The partnership was formed to carry on a retail rug, carpeting, and home furnishing business at St. Louis Park. Plaintiff was then and still is employed as a salesman for a wholesale carpeting firm with territory covering several states, including Minnesota. It was agreed that plaintiff was to continue with his employment and would not be expected to contribute any services to the newly created firm. He was, however, to contribute an amount of capital to the partnership equal to the amount contributed by defendant and it was agreed that they should share the profits and stand the losses equally. Defendant was employed as a salesman in the floor-covering department of a Minneapolis department store with average weekly earnings of $125. It was agreed that defendant should terminate his employment and devote his entire time to the partnership business. He became the active manager and took full charge of its affairs on March 1, 1948. He kept the firm's books and records although he had no previous bookkeeping training or experience. The "Park Studio" opened for business on April 19 of that year. Under well-settled rules of law, the facts will be stated in the light most favorable to the findings.

Plaintiff and defendant employed an attorney to prepare the written articles of copartnership. As so prepared they provided that the salary to be drawn by the partners should be determined from time to time by them. Defendant and said attorney both testified that the parties agreed that defendant's salary should be $100 per

week and that the reason a specific sum was not stated in the articles was so that the arrangement would be sufficiently flexible to enable them, from time to time, to change the salary arrangement. Plaintiff denied that there was an agreement that defendant's salary should be $100 a week. After the partnership agreement was executed, commencing with the latter part of 1948 or the early part of 1949 and continuing through the year 1950, there is an abundance of evidence from which the court could find that the parties agreed that throughout 1948 defendant's salary should be $100 a week; throughout 1949, $75 per week; and thereafter at the rate of $100 per week.

For the years 1948 through 1951, the firm's Federal income tax returns were prepared by the defendant, aided by an accountant only in 1951. As so prepared the returns showed a profit for the years 1948, 1950, and 1951 and a loss for the year 1949. During the years from 1948 through 1950 defendant drew from said business and charged to his salary account the following sums: 1948, $640; 1949, $1,068.67; 1950, $926.82. There was no written entry made on the books or records of the firm or on the Federal income tax returns indicating that defendant was entitled to the larger salary agreed upon. Defendant testified that the parties discussed the accrued salary in connection with the preparation of the income tax returns and his explanation of why it was not reflected in the returns was that both parties thought that if the salary was not actually paid it was not to be included in the returns until such time in the future as it could be withdrawn, at which time the taxes upon the salary would then be paid.

Although it was agreed, and the articles of copartnership provided, that the partners' contributions to capital were to be equal, equality was never achieved. Plaintiff's original contribution to capital in 1948 was $5,022 while defendant's was $7,614.20. Thereafter plaintiff made no further contribution to capital while defendant's capital contributions increased each year through the payment of cash, the transfer of an automobile to the firm, and the accrual of unpaid salary.

During the year 1951, because the business was not doing well and upon the recommendation of a wholesale company with whom the

firm did business, an accountant recommended by said company was engaged by the defendant, with the approval of the plaintiff, to check the books of the firm from the time it commenced business and to make recommendations. The accountant recommended that the firm change from the "cash basis" of accounting to the "accrual system" and that amended Federal tax returns be filed for the years 1948 through 1951 because the original income tax returns filed for those years had not been properly prepared and did not reflect the true financial condition of the firm and the interest of the partners therein. Amended returns were thereupon made and filed as a result of which the earnings reported in the previous years were changed so as to reflect the unpaid salary of defendant. The capital account of the plaintiff ultimately was reduced to $1,654.08. This figure was arrived at by subtracting from plaintiff's capital contribution of $5,022 his withdrawals of $399.34 plus $2,968.58, his equal share of the partnership loss. Defendant's capital account was correspondingly increased to $29,675.56 by giving him credit for his cash and car contributions throughout the years and by making proper allowance for the amount of his unpaid salary after deducting his share of the partnership loss of $2,968.58.

Because of a disagreement between the parties relating to their respective interests in said partnership, upon motion of the plaintiff, a receiver was appointed to operate the firm's business. In this situation, under a provision of the articles of copartnership, defendant elected to terminate the partnership and to purchase the interest of the plaintiff therein in the manner provided for in the articles. The trial resulted in findings for the defendant, and he was ordered to pay plaintiff $1,654.08, the amount of plaintiff's interest in the partnership capital less one-half of the fees and expenses of the receiver as allowed by the court. It was further ordered that, if defendant failed to make said payment to the plaintiff, the partnership property and assets should be sold at public sale and the net proceeds derived from the sale, after the payment of expenses, should be distributed between the partners in proportion to their respective shares in the capital of the partnership business, which interest was

fixed by the court at .053 percent for the plaintiff and .947 percent for the defendant.

■ The first question presented is whether there was sufficient evidence to sustain the finding of the trial court that plaintiff and defendant agreed that the latter was to receive a salary for managing the partnership business of $100 per week for the years 1948, 1950, 1951, and 1952, and $75 per week during the year 1949. As pointed out there is testimony indicating that the parties had agreed, prior to and at the time of the execution of the articles of copartnership, that defendant's salary should be $100 a week. However, plaintiff contends that this testimony was inadmissible as being in violation of the parol-evidence rule.[2] He claims that such testimony contradicts or alters the articles of copartnership which provide that each partner shall draw a salary in an amount as determined by the parties from time to time. In the opinion of the writer, not shared by some of the members of this court, such testimony was admissible and not in violation of the parol-evidence rule since the articles are silent as to the amount of salary allowance and specifically provide that that figure is to be set by agreement of the parties, which is what was done. We need not decide, however, whether the conversations, prior to the signing of the articles, were admissible since there is other evidence which is amply sufficient to sustain the findings of the lower court as to the salary agreed upon by the parties. The findings clearly indicate that the court was satisfied that the salary arrangement and figures were as claimed by the defendant aside from the conversations which occurred prior to the execution of the articles so that, if there was error in the admission of the prior conversations, it was error without prejudice.

The record shows that, when the partners were going over the figures in preparation for their 1948 Federal income tax returns, the question of respondent's salary and how it should be handled was discussed. They incorrectly believed that, because defendant did not actually receive the salary to which he was entitled, the tax returns should not reflect that amount. There is testimony that in 1949 the

---

[2] 7 Dunnell, Dig. (3 ed.) § 3368; 32 C. J. S., Evidence, § 851.

parties agreed that defendant's salary should be reduced to $75 per week since their business had not been doing as well as expected and salesmen in other stores were likewise making less money than formerly. Later in 1949 or early in 1950 the evidence shows that the parties agreed that defendant's salary should be restored to $100 per week because of the improvement in business and its future outlook. There is nothing to indicate any change in defendant's salary arrangement from that time on, and thus it must be presumed to have remained the same thereafter.

It is, of course, clear that testimony of conversations, subsequent to the execution of the articles, fixing defendant's salary was admissible and not in violation of the parol-evidence rule. Such testimony does not contradict, alter, vary, or add to the terms of the written contract, in this instance the articles of copartnership. It merely shows the salary agreement of the parties reached from time to time during the course of the partnership which agreement was specifically provided for by the terms of the articles themselves.[3] The law is well settled that a writing which does not purport to include all the terms of the agreement or which is shown to be incomplete by a mere inspection of its face, may be enlarged by parol or extrinsic evidence to show the entire agreement.[4]

We conclude that the finding of the lower court that the parties agreed that defendant was to receive a salary of $100 per week during the years 1948, 1950, 1951, and 1952, and $75 per week during 1949 must be sustained.

■ Plaintiff contends that defendant was guilty of fraud and misrepresentation by "wrongfully concealing" his claim for salary during the course of the partnership and, therefore, breached his fiduciary duty owing to the plaintiff. In view of what we have said respecting the salary arrangement, there is no merit to this conten-

---

[3]Art. II of the articles of copartnership reads in part as follows:

"* * * and that each partner shall draw a salary in an amount as determined by both persons from time to time, as the profits warrant."

[4]32 C. J. S., Evidence, § 1013b; Harding v. Texoleum Co. 154 Minn. 55, 191 N. W. 394; Bjornstad v. Northern States Power Co. 195 Minn. 439, 263 N. W. 289.

tion. The record shows no evidence of any "wrongful concealment" on the part of the defendant nor was that issue raised below. It appears that this was simply a case where defendant, who admittedly had no previous bookkeeping experience, and plaintiff agreed on an incorrect method of handling the salary account owing to defendant. Under these circumstances, a claim of fraud, misrepresentation, or wrongful concealment is without merit.

■ Although the point was not raised in the lower court and, therefore, is not properly before us, plaintiff now asserts that the Federal income tax returns for the years 1948, 1949, and 1950 constituted an account stated between the parties and, therefore, could not be changed by the amended returns filed in 1952. The record contains no evidence or testimony bearing on this question. In any event, the point is not well taken. "An account stated is an agreement, express or implied, between persons having business relations, that a statement of account between them is correct."[5] While an agreement might be implied as to some of the items contained in the tax returns, the record shows that the salary claim was discussed by the parties while they were considering the preparation of the tax returns and that they agreed not to reflect the amount defendant was entitled to receive. There is nothing to prevent parties from agreeing upon the correctness of certain items of an account between them although they do not agree as to all the items.[6] Here the evidence showed that the parties fully realized that defendant was entitled to a much larger salary than that indicated on the tax returns. Thus it cannot be said that the parties agreed either expressly or impliedly that the amount reflected on the returns was a final or binding determination of that item and, therefore, the tax returns did not constitute an account stated between the partners.

■ Plaintiff contends that the unpaid salary claim of defendant, if valid, should not have been credited to the latter's capital account but instead should have been carried as an indebtedness owing by the firm to defendant. Without a showing that the partners intended that the unpaid salary claim was to be credited to defendant's capi-

[5] 1 Dunnell, Dig. (3 ed.) § 50, and cases there cited.

[6] Behrens v. Kruse, 132 Minn. 69, 155 N. W. 1065, 156 N. W. 1.

tal account, it is doubtful whether such practice would be proper. We need not decide whether the practice, in the absence of an agreement, is proper since there was testimony which justified the court in finding that there was such an agreement and it is also clear that the case was tried by both parties on the theory that all advancements made to the firm by the partners, whether as cash, salary accruals, or otherwise, should be treated as contributions to capital investment. Moreover, the case was submitted to the court for decision upon that theory.

Defendant testified that, in the latter part of 1948 or in the early part of 1949, there was a discussion between the parties concerning his unpaid salary, which salary defendant stated had not been paid because they were promoting and building up the business of the studio. Defendant further testified that it was then agreed that unpaid salary should be held in a separate account and "that I had that coming as capital investment unless he [plaintiff] contributed a like amount."

Toward the close of the trial defendant's exhibits "9, 10, and 11," showing an analysis of the partner accounts of "Park Studio," covering the years from 1948 through September 30, 1952, prepared by an accountant and reflecting defendant's contentions at the trial, were offered in evidence. A recess was taken to permit plaintiff's counsel to examine and analyze said exhibits. When court reconvened the exhibits were again offered and received without objection. They showed that the share of the plaintiff in the capital account as of September 30, 1952, was $1,654.08 and that of the defendant $29,675.56, which sum included the unpaid salary claimed by him, and these sums gave plaintiff credit as a part of his capital investment for two checks which defendant had previously, throughout the trial, disputed. Plaintiff's counsel thereupon stated for the record:

"* * * In other words, your Honor, we are in accord with the figures that are produced by these exhibits with these minor exceptions, in 1948 there are charges against the plaintiff Lentz totaling $170, checks which he received from the Park Studio, they were never entered on the books. * * * We do not seem to be able to

locate the offsetting items of $170. * * * Then there were two other items in the following year, each totaling the figure $187 * * * and they have been identified in evidence here, we have no way of tying them up concretely with those items. * * * *With those two exceptions, we will agree with those figures except for the main dispute about the right to charge back salary.*

＊　＊　＊　＊　＊

"Q. Yes, and one other exception. The figures you have just given me allow Mr. Pearson credit for the car which appears to go on the partnership books in 1949?" (Italics supplied.)

It was then stated for the record by defendant's counsel, to which there was no objection, that the interest of the plaintiff in capital investment, as shown by exhibit "10," was ".0527-plus percentage" and the interest of the defendant ".9472-plus per cent." Thereupon plaintiff, during the examination of said accountant, introduced in evidence, without objection, plaintiff's exhibit "M," also prepared by said accountant, and the following occurred:

Mr. Converse (plaintiff's attorney):

"Q. Now, to make sure that there is no misunderstanding, Exhibit M is a recapitulation of the same identical figures as are produced in Defendant's Exhibits 9, 10 and 11, *with the single exception that the back salary claim has been eliminated?*

"A. That is correct.

＊　＊　＊　＊　＊

"Q. And according to Exhibit M, the defendant Pearson's interest in the partnership net assets as of September 30, 1952, is $21,171.09?

"A. That is correct.

"Q. And the interest of the plaintiff Lentz as of the same date is $10,158.55?

"A. That is right.

"Q. As a matter of percentage, Pearson has 67.6 interest?

"A. Correct.

"Q. And plaintiff Lentz has 32.4 interest?

"A. Right.

＊　＊　＊　＊　＊

154

"Mr. Converse: *In other words, your Honor, Exhibit M reflects our contention in this case with the single exception of the right to include the car.*

"The Court: Yes, okay." (Italics supplied.)

From what transpired it is clear that both parties tried the case upon the theory that whatever the parties had coming was to be treated as capital investment and it was submitted to the court upon that theory. In the final analysis the substantial issues for determination by the court were whether defendant was entitled to the unpaid salary which he claimed and whether he was to be credited for the automobile which he delivered to the firm. The court found for the defendant on both issues and accordingly held that the share of the plaintiff in the partnership capital as of September 30, 1952, was $1,654.08 and that of the defendant $29,675.56. It ordered that judgment be entered requiring defendant to pay plaintiff $1,654.08, the amount of his capital investment less one-half of the receiver's fees and expenses and that upon his failure to do so the assets of the partnership should be sold at public sale and the proceeds, after expenses, distributed and allocated between the parties in proportion to the respective shares of the parties in the capital of the partnership adjudged by the court to be: to the plaintiff .053 percent and to the defendant .947 percent. Having tried and submitted the case upon this theory and there being ample evidence to sustain the findings and conclusions reached by the trial court, under well-settled rules we cannot interfere.

Furthermore, under the circumstances of this case, the method of reflecting defendant's salary would not affect the allowance to plaintiff of $1,654.08 as found by the court below. The issue we are here concerned with centers around the investment account of plaintiff which defendant elected to purchase under the provisions of the articles of copartnership.[7] As previously pointed out plaintiff's

[7]Art. VIII of the articles of copartnership reads in part as follows:

"* * * Then, and in such case the aggrieved partner may, within three months after becoming aware of such breach or act, by a thirty day notice in writing, determine the partnership, and in such case he shall have the

original contribution to his capital account was $5,022. He subsequently made withdrawals totaling $399.34 leaving a balance of $4,622.66 which was further reduced by his share of the firm's net distributive loss amounting to $2,968.58, leaving the sum of $1,654.08, which was the figure arrived at as the amount due plaintiff by the court below. If the unpaid salary claim is treated as a credit to defendant's capital account, then that account would be increased by $17,008.93. On the other hand, if the salary claim is treated as a firm indebtedness, then that figure would be reflected on the partnership books as a liability of the firm owing to defendant personally. Irrespective of the manner in which the salary claim is reflected, it would not alter the net distributive loss since in either case the salary claim would reduce the firm's earnings to that extent. The only difference in the two alternative methods of reflecting the salary claim would be in the capital account of defendant, not in the capital account of plaintiff. The figures which make up the final amount of plaintiff's capital account are exactly the same no matter how the salary is reflected in defendant's account. Thus the figure of $1,654.08 found by the lower court is a correct and proper determination of the capital account of the plaintiff.

We have not overlooked plaintiff's other assignments of error. They are without merit and are not of sufficient importance to require discussion.

Affirmed.

#### UPON PETITION FOR REARGUMENT.

On February 17, 1956, the following opinion was filed:

DELL, CHIEF JUSTICE.

The petition for reargument is denied. The $1,000 error referred to in the petition appeared only in the 1948 Federal income tax

option, to be exercised at the time of giving such notice, of purchasing the share of the other partner in the capital and assets of the business as follows:

"1. The purchase price shall be the amount at which each partner's share shall stand on the partnership books in the last balance sheet which shall have been prepared prior to said notice of dissolution."

return. It was not carried forward or reflected in the accounts of the partners, as plaintiff suggests, nor did it in any way affect the correct amount due the partners as found by the court.

The notice to terminate the partnership under Art. VIII of the partnership agreement was given on December 10, 1952. It was based on events occurring subsequent to September 30, 1952, and therefore within the 3-month period provided in said article. Said article gives the aggrieved partner the right to purchase the other partner's share of the capital and assets of the partnership for the amount at which that share stands on the last balance sheet prepared prior to the notice of dissolution. The proper amount, in accordance with this provision, was found and allowed by the court. Moreover, the points specified and relied upon in the petition for reargument appear for the first time in said petition. The case was not tried below or argued in this court on that theory. The matter, therefore, is not properly before us.

Petition denied.