IRA E. MEAGHER, JR., AND OTHERS, COPARTNERS d.b.a. MEAGHER, GEER, MARKHAM & ANDERSON, v. ALBERT C. KAVLI, INDIVIDUALLY AND d.b.a. KAVLI REALTY COMPANY, AND OTHERS.

88 N.W. (2d) 871.

March 7, 1958—No. 37,113.

478

480

*Harry H. Peterson* and *L. W. Crawhall,* for appellants.
*Meagher, Geer, Markham & Anderson,* for respondents.

NELSON, JUSTICE.

This action arises out of an agreement to perform legal services in behalf of Albert C. Kavli and Edward L. Kavli, individually, in the defense of an action originally brought by Glen Dix against Harris Machinery Company, lessee, Clarence Peterson, its employee, A. C. Kavli, and E. L. Kavli, owner and lessor of premises involved.

The Dix case involved the alleged careless operation of an elevator in a warehouse in midway, St. Paul. Albert C. Kavli had no ownership or interest in the building. The case was tried before the District Court of Hennepin County and a verdict of $15,000 was rendered against defendants Harris Machinery Company, Clarence Peterson, and E. L. Kavli, who appealed to the state supreme court. This court rendered its decision of affirmance October 16, 1953. Dix v. Harris Machinery Co. 240 Minn. 218, 60 N.W. (2d) 628.

While other defendants have been named in the present action, the principal defendants appear to be Albert C. Kavli and Edward L. Kavli as individuals. Plaintiffs' claim for services includes preparation and trial of the Dix case before the district court and services rendered in the separate appeal of E. L. Kavli to this court. In the original complaint served, plaintiffs sued to recover the reasonable value for legal services rendered, and expenses incurred, substantially in the form of the old common count in an action of assumpsit regardless of any agreement as to value.

Defendants jointly interposed a denial to plaintiffs' original complaint admitting that the plaintiffs performed certain legal services in defense of the Dix case but alleging that only a small portion of said services were rendered by the plaintiff in behalf of defendant Albert C. Kavli. It was further denied that the services were of the agreed or of the reasonable value alleged by plaintiffs and that there was a balance due in the amount prayed for. On the day of the commencement of the trial, plaintiffs moved the court to amend the complaint by adding a second cause of action on an account stated. Defendants filed written objections and gave notice of motion, if the amendment be granted, to require plaintiffs to elect whether their claim is for services rendered as alleged in the original complaint or based on an account stated.

Prior to the accident involved in the Dix case, the Preferred Accident Insurance Company of New York, an indemnity company admitted to do business in the State of Minnesota, had issued its public liability policy to E. L. Kavli. After Glen Dix had been injured and commenced suit, it immediately undertook the defense of the owner, E. L. Kavli, employing the plaintiffs as its attorneys to investigate and defend. On April 30, 1951, the Preferred Accident Insurance Company was declared insolvent and placed in liquidation pursuant to an order of the New York Supreme Court. Plaintiffs notified the Kavlis of the liquidation and that the Preferred Accident Insurance Company would no longer be in a position to defend. The Kavlis thereafter employed plaintiffs as their attorneys to carry on their defense in the Dix case, the other defendants in the action being represented by their own attorneys. The case came on for trial and was dismissed as to A. C. Kavli. Thereafter plaintiffs represented E. L. Kavli individually in the district court and on his separate appeal to this court. After affirmance of the Dix case on appeal, E. L. Kavli paid one-half of the verdict, interest, and costs.

Plaintiffs rendered their statement accompanied by letter to A. C. and E. L. Kavli, December 15, 1953. This related to legal services rendered subsequent to May 1, 1951. The total charges made had been reduced by payment of $400 as a retainer and expenses in amount of $576.16. Two payments of $300 each were made November 22, 1954, and December 24, 1954, leaving $1,738.75 as an unpaid balance. The

statement was delivered to E. L. Kavli personally, at his office in Minneapolis, by Mr. O. C. Adamson, an attorney from plaintiffs' office. Plaintiffs had filed their claim with the insurance liquidator of the State of New York for services rendered as insurer's attorneys prior to May 1, 1951.

Defendant E. L. Kavli testified that after receiving plaintiffs' statement of account he had told Mr. Adamson, and later Mr. Arthur B. Geer of plaintiffs' firm with whom he also discussed the matter, that he did not know how much he owed them; that the statement submitted "was too high"; that he had sent the account to the insurance commissioner in New York and that he would have to hear from that source because the insurer was supposed to pay the bill; that he had not heard on the claim and he wanted to know what the liquidator in New York thought about the amount of the bill and to be advised by him what was going to be allowed before deciding whether to pay the balance of the bill in the amount submitted. The record does not disclose any word from the liquidator in that regard. E. L. Kavli said that he knew that he was indebted in some amount to plaintiffs on account for the reasonable value of the services he had bargained for and the expenses incurred and that he made two payments of $300 each in November and December 1954 to apply on account with that thought in mind. E. L. Kavli further admitted that he knew they were obligated to pay the reasonable value of plaintiffs' services (and expenses incurred) and that whatever he obtained from his insurer's liquidator would be toward recoupment, toward a payment of that loss. He testified that while he had not taken up the statement of account with the plaintiffs or their representatives, item by item, he nevertheless questioned all items when he objected and therefore mailed his separate checks of $300 each to apply on plaintiffs' account without letter, first, because he wanted to know what the liquidator was going to allow and, moreover, because the liquidator might know better what the charges should be after seeing the bill.

The testimony of E. L. Kavli strongly indicates that he had not expressly assented to owing a balance in the amount shown by plaintiffs' statement if credence is given to his testimony that he insisted both at the time of delivery and on later occasions that the bill was too

high. If there had not been a mutual and express assent, then the question arises whether an assent to the correctness of the balance can be inferred from the facts, conditions, and circumstances which the record presents.

There is testimony in the record that A. C. Kavli had also stated to some member of plaintiff firm that the bill was too high and that the bill was in the main the obligation of his brother E. L. Kavli.

Mr. Adamson, testifying for plaintiffs, said that he delivered plaintiffs' statement accompanied by letter directed to E. L. and A. C. Kavli. Later he talked to E. L. Kavli concerning the fact that the balance on account was overdue and must be paid. He testified that neither E. L. Kavli nor A. C. Kavli had, at any time, when discussing the account in person or over the telephone, said they were dissatisfied with the services rendered or that the bill submitted was too high. He said that defendants had never made a complaint to him about any item of the account during a period of 11 months which preceded the two payments of $300 each nor thereafter. Plaintiffs deny that the Kavlis objected to the statement of account as delivered to them and they have so testified.

It is clear that plaintiffs make no claim that the fees for the legal services rendered had been agreed upon in advance. Plaintiffs insist, however, that the bill as rendered reflects the reasonable value of their services and the necessary expenses incurred. They contend that defendants by delaying an unreasonable length of time without objecting to the bill and without responding thereto, except by E. L. Kavli making the two payments of $300 each, became impliedly obligated as under an account stated to pay the balance.

Plaintiffs, when asked to explain the account as applicable to E. L. and A. C. Kavli, individually, testified that $990 of the total bill was for services rendered from May 1, 1951, up to September 12, 1951, at which time defendant A. C. Kavli obtained his dismissal in the Dix trial; that the balance of the charges were for services rendered to E. L. Kavli, including necessary expenses incurred, during the remainder of the trial and on his appeal to this court. We think the record is clear that A. C. Kavli had no interest in or control over the building involved and that no further legal services were rendered to him after he obtained

his dismissal.

The trial court at the close of the testimony in the case at bar ruled that the evidence established an account stated as a matter of law and directed the jury to return a verdict for $1,738.75 with interest against all the defendants named. Defendants moved for a new trial, the court denied the motion, and all defendants named in the original action appeal from the order, separately and jointly.

■ Did the court err in permitting plaintiffs to amend their complaint to include a second cause of action upon an account stated?

The allowance by the trial court of the amendment to include a second count based upon an account stated was, we think, within the discretionary power of the court. This court so held under the code in Raspler v. Seng, 215 Minn. 596, 11 N.W. (2d) 440. Error had been urged pertaining to the ruling of the trial court, to which an exception had been taken, permitting the amendment in the Raspler case. The trial court allowed the submission of both the question of an account stated and reasonable value of the services. This court held that it could see no prejudice in the ruling of the trial court and commented that the testimony was such that it almost conclusively appeared that the plaintiff should recover upon some theory as defendant admittedly profited by his efforts.

It may be that prior to the adoption of the new rules a motion to compel an election might have been available. See, Ingle v. Angell, 111 Minn. 63, 126 N.W. 401. There is, however, no requirement under the new rules, such as there was under the code, M.S.A. 1949, § 544.27, that the causes joined must be consistent. Rule 8.05 (2) of Rules of Civil Procedure expressly provides that "A party may also state as many separate claims * * * as he has regardless of consistency * * *." See, 1 Pirsig, Minn. Pl. (4 ed.) §§ 1185, 1204; 2 Pirsig, Minn. Pl. (4 ed.) § 1824, and cases cited. In 1 Pirsig, Minn. Pl. (4 ed.) § 124, the author makes the following statement upon the subject of "account stated," citing Minnesota cases:

"An account stated creates a cause of action quite distinct from that which existed upon the individual items of the account itself. It followed under the former Code that under a complaint alleging an account

stated, proof was inadmissible of the individual items which made up the account and recovery could not be had as upon a running account. Since the action was not upon the account no bill of particulars could be demanded. To enable one to recover as upon an account stated he must declare upon it as such. If, in his pleading, he relies on the original transactions or the items of the account, and the defendant takes issue thereon, the action is then upon the original items which are open to attack by the defendant. In an action on an account stated it is unnecessary to allege a promise to pay the balance found due. It is sufficient to allege that an account was stated. From this a duty arises to pay the amount agreed upon. To allege that an account was stated in a certain sum means that the parties agreed that at the end of their previous dealings the sum named was the correct amount due and owing."

The testimony in the case at bar is such that the plaintiffs must have the right to recover upon some theory as plaintiffs admittedly performed legal services pursuant to voluntary arrangements for representation between the parties. Defendants contend that plaintiffs, having sued on open account for the reasonable value of the services in the first instance without including a second count based upon an account stated, waived the right to make a claim on an account stated. While they recognize that retention of an account by the party to whom sent without objection within a reasonable time may under some circumstances give it the force of an account stated, they maintain that, in order for an account based upon reasonable value to ripen into an account stated by virtue of its retention without objection, it must have been rendered for the purpose of stating or settling the account as an account stated in the first instance. Since the plaintiffs admittedly sued on open account only in the first instance, defendants claim their amendment to include an account stated came too late, the plaintiffs having by their first selection of a remedy disclosed their choice in the matter and waived their right to stand upon an account stated. Defendants contend that this would be the rule even though they had failed to object to the statement of account as originally rendered, which they assert they did not fail to do, nor to state their reasons why they had delayed assenting to the bill as rendered.

Defendants rely upon Northern Line Packet Co. v. Platt, 22 Minn. 413, followed in McCormick Harvesting-Machine Co. v. Wilson, 39 Minn. 467, 40 N.W. 571, wherein this court held that to enable a plaintiff to recover, as upon an account stated, upon written statements or accounts made out and rendered to defendant, he must declare upon them as such; and that if in his complaint he sets out the original transactions, and not the account stated, as the grounds of his action, either party may prove what the original transactions were.[1]

■ Defendants assert that the plaintiffs have waived their right to stand upon an account stated. Waiver is ordinarily a question of fact for the jury. It is only where there is but one inference which can be drawn from the facts that the question of waiver becomes one of law. The general rule seems to be that where different inferences may be drawn waiver must be resolved as a fact question by the jury. The commonly accepted definition of waiver is that it constitutes a voluntary relinquishment of a known right whose essential elements are both intent and knowledge, actual or constructive. It needs no consideration to support it. If the known right is waived, it cannot be reclaimed without consent of the adversary and once established it is irrevocable even in the absence of any consideration therefor. Since the question of waiver is largely one of intention, it need not be proved by express declaration or agreement, but may be inferred from the acts and conduct of the parties against whom the defense is being asserted. Plaintiffs assert that defendants' claim that they are entitled to rely upon the defense of waiver is based upon a multitude of errors. First, plaintiffs contend that under their first cause of action, wherein they sue for the reasonable value on an indebitabus assumpsit count, they are en-

---

[1]See, Horn v. St. Paul & N. P. Ry. Co. 37 Minn. 375, 34 N. W. 593; 1 Am. Jur., Accounts and Accounting, § 26; 1 C. J. S., Account Stated, § 47; A. Krolik & Co. v. Ossowski, 213 Mich. 1, 180 N.W. 499; Harrison v. Henderson, 67 Kan. 202, 72 P. 878; Rowell v. Marcy, 47 Vt. 627; Monroe Grocery Co. v. T. L. & M. Davis, 165 La. 1027, 116 So. 546; Patillo v. Allen-West Commission Co. (8 Cir.) 108 F. 723; Bump v. Cooper, 20 Ore. 527, 26 P. 848; Gladys Belle Oil Co. v. Clark, 147 Okl. 211, 296 P. 461; Black v. Wickett, 127 Okl. 53, 259 P. 642; Branum v. Burns, 121 Okl. 5, 247 P. 58.

titled to prove either an express or an implied contract for services, and second that the old doctrine of waiver of one cause of action by asserting and pleading another is clearly procedural and that there is nothing substantive about pleading the defense of waiver at all under the facts and circumstances involved; that while the new rules do not directly modify substantive law, they do have a great effect on the enforcement of substantive rights.

■ A plaintiff may under a common count recover on either an express or an implied contract.[2] Whether the contract pleaded in plaintiffs' first cause of action is an express or an implied contract is a matter which is of necessity concerned with the original transactions. An account stated is something else. An account stated comes into being through an acknowledgment or an acquiescence in the existing condition of liability between the parties. If an account rendered is acquiesced in by the parties and the correctness of the statement is admitted, then the law will imply a promise to pay whatever balance is thus acknowledged to be owing and due, without further proof; likewise, proof of the retention of a statement of account without objection for more than a reasonable length of time may under certain circumstances operate as proof of an acquiescence in or an admission of the correctness of the statement of account and permit the legal inference that an account stated has been established. If an account stated is established it will constitute a promise to pay whatever balance is thus acknowledged to be due without proof of separate items for the reason that it has thereby become a new and independent cause of action; it requires then no proof of the separate items of liability from which the unpaid balance results. It does not discharge the old debt nor bar an action on it in its original form. The balance must be struck under such circumstances as to import a promise of payment on the one side and acceptance on the other. The balance must be arrived at as the express or implied result of computation and agreement.

It was contended by the parties defendant in Anderson v. Twin City Rapid Transit Co. 250 Minn. 167, 184, 84 N.W. (2d) 593, 604, that the Minnesota rules of civil procedure (referring specifically to

---

[2]See, Schimmelpfennig v. Gaedke, 223 Minn. 542, 27 N. W. (2d) 416.

the rules on summary judgment) negative expressly any theory that the harsh doctrine of waiver in circumstances such as existed in that case, though substantive law, could be invoked in the enlightened days in which the present rules furnish guidance to bench and bar. In answer to that contention we said:

"* * * We are unable to go along with defendants in their contention that the rules of civil procedure negative and eliminate the doctrine of waiver, in any degree, any more than if it should be claimed that the same rules had eliminated the doctrine of estoppel. Both doctrines have found their place in our substantive law, which the rules of civil procedure neither have nor could legally attempt to change, these rules being limited to governing the procedure in the district courts of this state and not in any respect to legislate where substantive law is involved."

It has long been recognized that substantive law is that part of law which creates, defines, and regulates rights, as opposed to "adjective or remedial" law, which prescribes method of enforcing the rights or obtaining redress for their invasion. The subject of waiver was fully considered in Engstrom v. Farmers & Bankers Life Ins. Co. 230 Minn. 308, 41 N.W. (2d) 422.

■ Did the trial court err in holding, under the pleadings and the evidence, that an account stated had been established as a matter of law instead of submitting to the jury as fact issues, under proper instructions, the questions whether the plaintiffs were entitled to recover upon an account stated, or to recover the reasonable value, of some, or all, of the original debt as sued upon in the first cause of action?

In the early case of Wharton v. Anderson, 28 Minn. 301, 305, 9 N.W. 860, 862, this court in discussing the effect of an account stated as evidence said:

"* * * There is some confusion in the books as to the precise effect of a stated account upon the rights of the parties, but we are inclined to the opinion that it is only *prima-facie* evidence of the correctness of the balance, and not conclusive upon it, unless in arriving at the agreed balance there has been some concession made upon items disputed between the parties, so that the balance is the result of a compromise, or

some act has been done or forborne in consequence of the accounting, and relying upon it, which would put the party claiming the benefit of it in a worse position than as though it had not been had, so as to bring the case within the principles of an estoppel *in pais*. A stated account, not affected by such new consideration or estoppel, may be impeached for mistake or error in law or in fact with respect to the items included in it, or for omission of items. These positions are sustained by weighty authority. Perkins v. Hart, 11 Wheat. 237; Harden v. Gordon, 2 Mason, 562; Young v. Hill, 67 N. Y. 162; Thomas v. Hawks, 8 Mees. & W. 140; Wiggins v. Burkham, 10 Wall, 129; Lockwood v. Thorne, 18 N. Y. 285; Hutchison v. Market Bank of Troy, 48 Barb. 302; Ruffner v. Hewitt, 7 W. Va. 585; 1 Story, Eq. Jur. § 524; 2 Chitty on Contracts, 962; Warner v. Myrick, 16 Minn. 91."

The question whether an account stated existed between the parties involved was considered by this court in Isaacs v. Wishnick, 136 Minn. 317, 318, 162 N.W. 297, as follows:

"An account stated is an agreement that a statement of account between the parties is correct. Swain v. Knapp, 34 Minn. 232, 25 N.W. 397. The agreement may be implied as well as express, and it may be inferred where the statement is rendered by one party and acquiesced in by the other. I. L. Elwood Mnfg. Co. v. Betcher, 72 Minn. 103, 75 N.W. 113; Western Newspaper Union v. Segerstrom Piano Co. 118 Minn. 230, 136 N.W. 752. But, where the debtor renders a statement of the account and the creditor protests that it is incorrect, it is needless to say there is no agreement and no account stated. The subsequent use of a check transmitted by the debtor as full payment may be some evidence of subsequent acquiescence notwithstanding his protest, but it is in no sense conclusive."

■ In Western Newspaper Union v. Segerstrom Piano Mfg. Co. 118 Minn. 230, 236, 136 N.W. 752, 754, the trial court charged the jury in part as follows:

"* * * Now, when a statement is furnished, and there are certain objections within a reasonable time, then, of course, the evidence as to acquiescing in the account furnished by silence is out of the case."

This court held that there was no error in giving that instruction. In Behrens v. Kruse, 132 Minn. 69, 155 N.W. 1065, 156 N. W. 1, we held that parties may agree upon the correctness of certain items or amounts, though they do not agree as to all, and that such an agreement is an account stated as to the items agreed upon. Lentz v. Pearson, 246 Minn. 145, 74 N.W. (2d) 662.

■ The subject of an account stated, and the sufficiency of the evidence, came before this court for full discussion in Hall-Vesole Co. v. Durkee-Atwood Co. 227 Minn. 379, 35 N.W. (2d) 601. In concluding that the evidence fell short of establishing an account stated, the court cited as authority for the conclusions reached the Wharton case; Swain v. Knapp, 34 Minn. 232, 25 N.W. 397; Western Newspaper Union v. Segerstrom Piano Mfg. Co. *supra;* Isaacs v. Wishnick, *supra;* Kelly-How-Thomson Co. v. Merritt Dev. Co. 147 Minn. 153, 179 N.W. 897; Western Gravel Co. v. M. J. Nolan Co. 174 Minn. 315, 219 N.W. 148, and quoted with approval the following statement from Lockwood v. Thorne, 18 N. Y. 285, 288:

"In stating an account, two things are necessary: 1st. That there be a mutual examination of the claims of each other by the parties; and 2d. That there be a mutual agreement between them, as to the correctness of the allowance and disallowance of the respective claims, and of the balance, as it is struck upon the final adjustment of the whole account and demands on both sides. The minds of the parties must meet upon the allowance of each item or claim allowed, and upon the disallowance of each item or claim rejected. They must mutually concur upon the final adjustment, and nothing short of this in substance will fix and adjust their respective demands as an account stated.

"But in proving an account stated, it is not necessary to show an express examination of the respective demands or claims of the parties, or an express agreement to the final adjustment. All this may be implied from circumstances. If the account be rendered by one party, and the other party, upon examining it, makes no objection, an inference might legitimately be drawn that he was satisfied with it, as rendered. So, also, if the account should be made out by one party and transmitted to the other party by mail, and the latter should omit

to communicate objections to the party rendering the account within a reasonable time, an inference might be drawn that he was satisfied with it. Such omission to object would therefore be legitimate evidence in proving an account stated. There is no arbitrary rule of law which renders an omission to object in a given time equivalent to an actual agreement or consent to the correctness of the account thus rendered; but it is merely competent evidence, subject to be rebutted by circumstances from which counter inferences may be drawn."

The weight to be given to the inferences will vary with the circumstances. They may be such as to require the courts to regard it as conclusive as did the trial court in Kelly-How-Thomson Co. v. Merritt Dev. Co. *supra*. There can be no hard-and-fast rule.

While an account stated is not now excluded from operation in any matters wherein accounts are involved, the doctrine is said to have been founded originally on the practice of merchants which gradually expanded in the mercantile field until reaching its present development.

An attorney may recover for his services under a common count in general assumpsit, or recovery may be based on an express contract for a stipulated fee if the terms thereof have been fully performed so that he becomes entitled to the fee.[3] Under our new rules of civil procedure both may be asserted in the same complaint. Even though by the statute the measure and mode of compensation of an attorney are left unrestricted to the agreement, express or implied, of the parties, if the attorney is discharged or the case is settled before the attorney becomes entitled to the fee under the contract, only the reasonable value of the services rendered can be recovered. There is no reason under our statutory provision why attorneys may not, after the services are rendered, agree upon what they were worth, and what the client shall pay for them, as fully as they might agree before they are rendered. However, as this court said in Beals v. Wagener, 47 Minn. 489, 50 N.W. 535, the court would probably scrutinize such an agreement closely, to see that there was no overreaching, and that the client acted with as full and candid information as the attorney can give him. It was also stated by this court that (47 Minn. 490, 50 N.W. 535) "Whatever

---

[3]See M. S. A. 549.01 on agreement as to fees of attorney.

may have been the rule formerly, we see no reason to doubt that now an attorney and his client may state the account of the former." The court also said: "The evidence is certainly not decisive — indeed, is rather meagre — upon the point, but we think it made a case for the jury, and that they might find from it that, although at first Wagener expressed himself that one of the charges of Beals was too much, yet, after the explanations made by the latter, he became satisfied, and assented to the account as stated." The evidence in that case was held to justify a finding by the jury that an account rendered was assented to. No other case appears to have come before this court involving the question of an account stated between attorney and client. This we think, in large part, is due to the fact that the contract between attorney and client differs from an ordinary contract of employment in that one of the parties thereto may put an end to the same whether agreeable to the other or not, leaving the attorney in a position where he may only recover the reasonable value of the services he has rendered but cannot recover damages for breach of the contract. This court has quoted with approval from Martin v. Camp, 219 N.Y. 170, 176, 114 N.E. 46, 48, L.R.A. 1917F, 402, 405, the statement that "The rule secures to the attorney the right to recover the reasonable value of the services which he has rendered, and is well calculated to promote public confidence in the members of an honorable profession whose relation to their clients is personal and confidential." Of course, what has been said declaratory of the rule that the attorney is limited to a recovery upon quantum meruit does not relate to a case where the attorney in entering into such a contract has changed his position or incurred expenses, or to a case where an attorney is employed under a general retainer for a fixed period to perform legal services in relation to matters that may arise during the period of the contract.[4] In Krippner v. Matz, 205 Minn. 497, 506, 287 N.W. 19, 24, in discussing an agreement between an attorney and his client this court said:

"We think it is a misconception to attempt to force an agreement

---

[4]Ertsgaard v. Bowen, 183 Minn. 339, 237 N.W. 1; Eriksson v. Boyum, 150 Minn. 192, 184 N.W. 961; Lawler v. Dunn, 145 Minn. 281, 176 N.W. 989; Southworth v. Rosendahl, 133 Minn. 447, 158 N.W. 717, 3 A.L.R. 468.

between an attorney and his client into the conventional modes of commercial contracts. While such a contract may have similar attributes, the agreement is, essentially, in a classification peculiar to itself. Such an agreement is permeated with the paramount relationship of attorney and client which necessarily affects the rights and duties of each. As we have seen, despite the agreement but as an incident to the relationship, a client has full power to discharge his attorney without cause at any time, being liable only in such event for the reasonable value of the services rendered."

In 6 Corbin, Contracts, § 1313, p. 212, the author has the following to say as regards the rendition of a bill by a lawyer or others who have performed services:

"Attention is again called to the distinction between a mere arithmetical account and an agreement in settlement of an unliquidated claim. Retention in silence of a rendered statement of the former kind may well be found to be an expression of assent because the effect of such assent is of much less importance than in cases of the latter kind. The rendition of a bill by a lawyer or doctor, or other person who has performed services, may be an offer of compromise or liquidation of the claim; but mere retention of this bill in silence, unaccompanied by other circumstances should seldom, if ever, be held to be an acceptance of the offer. The effect of such an acceptance is much greater than in the case of assent to an arithmetical computation."[5]

Considering the conflicts in the testimony and the contradic-

---

[5]For cases from other jurisdictions involving the question whether an attorney and his client may agree to an account stated by the former for his services, see Cooper v. Conklin, 197 App. Div. 205, 189 N.Y.S. 552; Chinn v. Lewin, 57 App. D.C. 16, 16 F. (2d) 512, 49 A.L.R. 1480; Harrison v. Henderson, *supra;* Griffith v. Hicks, 150 Ark. 197, 233 S.W. 1086, 18 A.L.R. 882; Locke v. Woodman (Mo. App.) 216 S.W. 1006; Crane v. Stansbury, 173 Cal. 631, 161 P. 7.

For a discussion of "silence as an assent," see Givens v. Parker (Okl.) 258 P. (2d) 936. As to retention beyond a reasonable time, without objection, see I. L. Elwood Mfg. Co. v. Betcher, 72 Minn. 103, 75 N.W. 113; Hart Publications, Inc. v. Kaplan, 228 Minn. 512, 37 N.W. (2d) 814; I C.J.S., Accounts Stated, § 42c.

tions disclosed by the record in the instant case, the finding that an account stated has been conclusively established as a matter of law does not find support. This is not a case where the determination of that question is dependent solely upon documentary evidence and undisputed testimony. If an account stated between the parties is to find support in the record before us, it must be by implication and based upon facts and circumstances shown from which proper inferences may be drawn, as well as upon the statements, the acts, and the conduct of the parties. The record discloses facts and circumstances creating issues which must be resolved by a factfinding tribunal. Since there seems to be no dispute as to what the services rendered were, the question is whether or not the status between the parties is one of account stated or one where the plaintiffs may recover on the basis of reasonable services rendered.[6]

We call attention to the fact that the record indicates that A. C. Kavli and E. L. Kavli became obligated in different amounts for the reasonable value of the services rendered to each of them individually. The record remains silent as to why other defendants, apart from the Kavlis, were included jointly in the directed verdict while the record does not disclose the basis upon which they may have become obligated. So far as the evidence may constitute proof of an account stated, it is limited to a bill for services directed to A. C. and E. L. Kavli. An account stated can only result from a new arrangement which constitutes a new agreement, the validity of which is founded upon the assent thereto by both parties. This court cannot say what the facts are when the testimony of the contending parties is contradictory and conflicting. Murray v. Mekoli, 193 Minn. 93, 257 N. W. 809.

We think the courts are generally agreed that in the absence of a contract or statute fixing the amount of the compensation, a lawyer performing legal services for his client is entitled to recover the reasonable value of those services and that it is generally recognized that the determination of such reasonable value involves a question of fact to be answered in the light of the peculiar circumstances of each individual case, and that one of the basic factors to be taken into consideration in

---

[6]See, Johnston v. Hunt, 15 N.J. Misc. 247, 190 A. 314.

determining the reasonable value of legal services is the nature, extent, and difficulty of the services rendered. This court has stated the rule to be applied in In re Living Trust Created by Atwood, 227 Minn. 495, 35 N.W. (2d) ·736, 9 A.L.R. (2d) 1126.

Since we have reached the conclusion that the conflicts in the evidence present fact issues which require submission to a jury and since there must be a new trial, there appears to be no necessity of discussing separately the several assignments of error.

■■ We have indicated that a jury at another trial may, if the evidence permits, under the pleadings as amended, with proper instructions from the court, determine as between plaintiffs and defendants, if recovery is warranted, whether plaintiffs shall be entitled to recover for legal services rendered on an account stated between them, or if an account stated fails of proof, shall in lieu thereof become entitled to recover the reasonable value on open account, according to the original transactions, pursuant to plaintiffs' cause of action as first alleged in their original complaint.

Reversed and a new trial granted.

Reversed.