ART MONSON AND ANOTHER v. PHILIP P. PICKETT AND
ANOTHER.

93 N. W. (2d) 537.

November 28, 1958—No. 37,311.

*Robins, Davis & Lyons* and *Sidney S. Feinberg,* for appellants.
*Olson & Nelson* and *Lauerman & Johnson,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action in replevin for possession of a stock of hardware merchandise belonging to defendant, Philip P. Pickett, for the purpose of foreclosing plaintiffs' chattel mortgage thereon. The foreclosure sale was conducted by the sheriff of Meeker County on May 25, 1956. At the sale plaintiffs' bid of $4,080 for the property was the highest offered and accordingly the property was sold to plaintiffs and the mortgage indebtedness discharged.

In the replevin proceedings defendant interposed an answer and counterclaim wherein he denied that the mortgage was in default and claimed damage against plaintiffs because of their unlawful conversion of the property in connection with the foreclosure proceedings.

The mortgage was originally in the sum of $4,342.27 and provided:

"That said mortgagors shall maintain an inventory in the amount of at least Two Thousand Dollars ($2,000.00), figured on the basis of wholesale cost, over and above the balance owing hereunder from time to time.

\* \* \* \* \*

"\* \* \* if the mortgagees shall at any time, in good faith, deem said debt insecure, or fear diminution or waste of said property, then it shall be lawful for the mortgagees \* \* \* to take immediate possession of said property \* \* \* and \* \* \* sell and dispose of said property \* \* \* as provided by law \* \* \*."

It was payable in monthly installments of $100. All monthly payments had been made up to the time of the commencement of the replevin action, and the unpaid balance thereon was then the sum of $3,697.63. Plaintiffs based their right of possession upon the ground that their debt had become insecure. To support this claim they presented evidence as follows:

On July 22, 1955, defendant had purchased the hardware business conducted by plaintiffs at Grove City. The merchandise in dispute comprised the stock on hand therein. Defendant executed and delivered to plaintiffs the chattel mortgage described to secure the unpaid portion of the purchase price in the transaction. Immediately thereafter, defendant took possession of the business and operated it until the first part of April 1956. During this period Art Monson, one of the plaintiffs,

was employed therein by defendant. During the month of April 1956 defendant undertook a "store-wide, going-out-of-business" sale in which he advertised his intention of disposing of all the merchandise on hand from "wall to wall."

The sale proceeded in accordance with the advertisements and as a result the stock of merchandise was rapidly diminishing. Plaintiff Art Monson, who had assisted defendant in the sale, testified that after it had been in progress for about a week so much merchandise had been sold that he feared that in another week the stock on hand would be almost entirely diminished. Plaintiffs at that time confronted defendant and requested that he apply part of the sale's proceeds upon the chattel mortgage. Defendant refused, contending that, since the monthly installments of $100 each provided for in the chattel mortgage were not then in default, no further obligation rested upon him. Plaintiffs then consulted with their banker and their attorney and upon their advice commenced the present replevin action. They furnished a replevin bond in the proceedings, but defendant did not exercise his right to rebond therein. The foreclosure sale followed as above set forth.

In an order made after a pretrial conference relating to the issues to be determined, the trial court stated:

"Counsel for defendants claim that under the chattel mortgage * * * the only basis on which plaintiffs could have deemed themselves insecure for the purpose of foreclosing the mortgage was if the inventory was below the amount fixed in the chattel mortgage as reformed * * *. The Court now determines that the minimum inventory clause contained in the chattel mortgage as reformed is not a limitation upon the insecurity clause in said chattel mortgage, but that it is merely one of the circumstances for the jury to consider on the question of whether the foreclosure was valid or wrongful."

At the close of the testimony defendant moved that the court submit only the issue of damages, contending that plaintiffs' participation in and consent to the sale constituted a "waiver" of any right they otherwise had to deem the mortgage in default under the insecurity clause therein; and further that the jury be instructed that it "must take into consideration the minimum inventory clause in conjunction with the insecurity

clause in the chattel mortgage in determining whether or not the plaintiffs in good faith, on reasonable grounds, based on facts, deemed themselves insecure."

In its instructions the trial court stated:

"* * * Monson and Bomsta base their claim that they were entitled to possession for the purpose of foreclosing the mortgage * * * upon the * * * ground that they deemed themselves insecure under the insecurity clause of the chattel mortgage. * * *

"* * * Under the insecurity clause * * * plantiffs * * * could only take possession * * * upon the * * * existence of facts constituting a reasonable ground for a belief on their part that they were insecure. * * *

"The belief that the debt is insecure must be founded in good faith. * * * It is not essential that the debt was in fact insecure. * * *

"* * * if the minimum inventory was maintained, that is a matter for you to consider in determining whether Monson and Bomsta in good faith deemed themselves insecure. If you find that notwithstanding the fact that Pickett kept up the minimum inventory, other facts existed on April 20, 1956, which would justify reasonable persons to conclude that their security was endangered, and that Monson and Bomsta did so conclude, then they were entitled to possession * * *."

The trial court refused to submit the issue of waiver, to which ruling defendant excepted. Otherwise no further requests or exceptions were made in connection with the charge. The jury returned a verdict in favor of plaintiffs.

Subsequently, defendant moved for a new trial on the ground that the trial court erred in holding that "the minimum inventory clause * * * was not a limitation upon the insecurity clause in said chattel mortgage"; and in refusing to submit the issue of waiver. In a memorandum attached to the order denying this motion, the court stated:

"Counsel for defendants [contend] * * * that after the payment is made on the mortgage that new circumstances must arise before the mortgagee can deem himself insecure. * * * At least a week intervened between the date of payment [of the $100 installment] and the taking of possession under the replevin proceeding. During this week a close-out sale was in progress. The cream of the merchandise was going out fast,

and no replacements being made. A change of circumstances occurred every day. The Court is of the opinion that the evidence fully justified the jury in concluding that the plantiffs in the exercise of good faith determined themselves to be insecure, and that such determination was well-founded upon the actual existence of facts constituting a reasonable ground therefor."

This appeal is from the order denying defendant's motion for a new trial. It is based upon the same grounds asserted by defendant in such motion.

■ The court's construction of the relationship between the minimum-inventory provision and the insecurity clause in the chattel mortgage appears to be reasonable and correct. At the commencement of the replevin action there was an unpaid balance on the chattel mortgage of $3,697.63. Under the minimum-inventory provision thereof, defendant was required to then have on hand a stock of merchandise of the value of at least $5,697.63 at wholesale prices. Assuming that there was no default under this provision, it would not follow that plaintiffs could not "in good faith deem, said debt insecure, or fear diminution or waste of said property" and "take immediate possession" of the stock for the purpose of foreclosure proceedings as provided in the mortgage. The evidence is quite definite that plaintiffs' security was rapidly diminishing as the sale progressed. Monson testified that, after it had been in progress for a week, so much merchandise had been sold that he feared that in another week the stock would be almost entirely diminished. As the trial court stated in its memorandum, "The cream of the merchandise was going out fast, and no replacements being made. A change of circumstances occurred every day." Defendant's refusal to apply any of the proceeds of the sale on the chattel mortgage added to plaintiffs' fear that in another week their debt might be worthless. The fact that defendant had paid all of the monthly installments on the chattel mortgage up to this time would afford plaintiffs little comfort in this respect. The circumstances which caused them to conclude that their security was endangered occurred subsequent to such installment payments. Defendant's default was not in his failure to pay the installments or to maintain the minimum inventory, but in adopting a plan for the complete

and rapid disposal of the stock of merchandise on hand "wall to wall," thereby eliminating the only security which plaintiffs had for the mortgage indebtedness.

There is ample evidence to sustain the finding, implicit in the jury's verdict, that, when plaintiffs became aware of this, in good faith they deemed the debt to be insecure and hence in accordance with the terms of the mortgage commenced action for immediate possession of the property so that it might be sold in foreclosure proceedings as provided by law.

■ Defendant's claim of waiver is based upon the fact that plaintiff Monson at first participated in the "close-out" sale. We fail to see how this would detract from evidence indicating that *after* the sale had been in progress for about a week both plaintiffs became aware of the fact that the stock was rapidly diminishing and that no replacements therein were being made or contemplated. They acted promptly in requesting defendant to apply some of the sale proceeds upon the chattel mortgage debt. When defendant refused, they acted promptly in consulting their attorney and in instituting the replevin proceedings. No other practical remedy appears to have been available for them. Waiver is the voluntary relinquishment of a known right. Meagher v. Kavli, 251 Minn. 477, 88 N. W. (2d) 871. There must be an intent to waive the right, gathered either from the actions or the expressions of the party against whom the claim is asserted. Meagher v. Kavli, *supra.* Here there is nothing to support a finding that plaintiffs either by their actions or by their expressions ever indicated to defendant any intent on their part to waive *any* of their rights under the chattel mortgage. It follows that the trial court was correct in refusing to submit this issue to the jury.

Affirmed.