**In re Consolidated Appeal from an Order of the MINNESOTA PUBLIC UTILITIES COMMISSION (NORTHWESTERN BELL TELEPHONE COMPANY, P–421/GR–82–203).**

Nos. C9–84–1687, C9–84–1707.

Court of Appeals of Minnesota.

April 9, 1985.

Review Denied May 31, 1985.

Hubert H. Humphrey, III, Atty. Gen., Karl W. Sonneman, Sp. Asst. Atty. Gen., St. Paul, for Minnesota Public Utilities Comm.

James A. Gallagher, Gen. Atty., Minneapolis, for Northwestern Bell Telephone Co.

Glenn E. Purdue & James M. Strommen, Minneapolis, for amicus curiae Suburban Rate Authority.

Douglas Peine, Minneapolis, Russell L. Doty, St. Paul, for appellant Metro Deaf Senior Citizens, Inc.

Evan J. Henry, Winona, Pro Se.

Considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This is a consolidated appeal from a district court judgment affirming decisions of the Minnesota Public Utilities Commission (MPUC) in a telephone rate case. Appellant Metro Deaf Senior Citizens, Inc. contends (1) the MPUC erred by requiring it to prove that its proposals were reasonable, (2) the MPUC arbitrarily failed to address several issues it raised, and (3) Metro Deaf is entitled to costs and attorney fees in-

curred after July 1, 1983. Appellant Evan Henry contends he was denied due process.

## FACTS

Northwestern Bell Telephone Company provides telephone service to approximately 85 percent of Minnesota telephone users. When Bell petitioned the MPUC for a general rate increase, Metro Deaf and Henry intervened opposing the proposed rate increase and seeking other relief.

At the hearings, Metro Deaf raised concerns about the problems deaf persons have obtaining adequate telephone service. Metro Deaf projected that 39,341 Minnesotans were completely deaf in 1980. Of this number, 537 have telecommunications devices for the deaf (TDD's) which allow them to use the telephone to communicate with others who have TDD's. Many of the TDD's now in use are obsolete. Each TDD costs between $300 and $1,500 dollars. Many deaf persons are unable to obtain TDD's because of their economic circumstances. Northwestern Bell maintains a loan program for TDD's with a $1,200 ceiling.

Metro Deaf recommended Northwestern Bell be required to provide low cost or free TDD's to the deaf and to those with whom the deaf wish to communicate. It made a number of other proposals designed to alleviate the communication problems of the deaf.

In April 1983, the MPUC issued findings of fact, conclusions of law and an order. With regard to the proposals raised by Metro Deaf, the MPUC found Metro Deaf had the burden of proving its proposals were reasonable and that Metro Deaf's proposals were not supported by evidence in the record. Specifically, the MPUC found it could not determine whether the proposals were feasible or cost prohibitive.

The MPUC concluded Metro Deaf "may have shown that service to the deaf is less than adequate [but] it has not shown that Northwestern Bell discriminated against the deaf." Likewise, the MPUC believed many of the remedies sought by Metro Deaf were beyond the reach of its limited

statutory authority. The agency concluded, however, that further investigation should be made into certain of the proposals and ordered Northwestern Bell to answer six questions regarding services for the deaf. This April 1983 order was appealed to the district court by Metro Deaf.

Northwestern Bell answered the questions, and comments were received by the MPUC. The MPUC then issued supplemental findings of fact and conclusions of law. Northwestern Bell was ordered to increase its maximum loan amount to $1,600 and eliminate interest charges. The MPUC also ordered Northwestern Bell to provide an intercept system in certain cases when TDD telephone numbers are changed or disconnected. Metro Deaf then appealed this order and another order denying attorney fees. The district court consolidated the appeals and affirmed the MPUC's decisions.

Appellant Henry intervened and submitted testimony at the hearings. All parties waived cross-examination of his prefiled testimony. Henry did not appear on some of the hearing days. He sought to reopen the hearings to introduce additional evidence. The administrative law judge denied his motion. The MPUC refused to reopen the record during its consideration of the administrative law judge's report or upon Henry's petition for reconsideration. The district court determined Henry was accorded his full procedural rights in this proceeding and affirmed the MPUC's order.

## ISSUES

1. Did Metro Deaf have the burden of proof to show its proposals were reasonable?

2. Did the MPUC err by failing to address some of the proposals made by Metro Deaf?

3. Is Metro Deaf entitled to attorney fees?

4. Was Henry denied due process?

## ANALYSIS

1. The MPUC concluded Metro Deaf had the burden of proving its proposals were reasonable and that Metro Deaf's proposals were not supported by evidence in the record. Metro Deaf asserts it need only show telephone service to deaf citizens is inadequate. It claims the burden of proof with regard to the reasonableness of the proposals should have been placed upon Northwestern Bell because Bell was in a better position to provide necessary technical and financial data.

Minn.R. 1400.7300, subpt. 5 (1983) establishes the burden of proof in a contested case.

> The party proposing that certain action be taken must prove the facts at issue by a preponderance of the evidence, unless the substantive law provides a different burden or standard.

*Id.* In this case, Metro Deaf is the party making proposals. Thus, it must prove the facts at issue and the reasonableness of its proposals, unless the substantive law provides differently.

"[S]ubstantive law is that which creates underlying rights and duties * * *." *Association of American Railroads v. Interstate Commerce Commission,* 600 F.2d 989, 995 (D.C.Cir.1979) (citing *Meagher v. Kavli,* 251 Minn. 477, 88 N.W.2d 871 (1958)). The rights and duties of telephone companies are contained in Minn.Stat. ch. 237. A telephone company which seeks a change in rates has the burden of proof to show that a rate change is just and reasonable. Minn.Stat. § 237.075, subd. 4 (1984). Chapter 237, however, does not address changes initially proposed by other parties. Since the substantive law makes no provisions otherwise, Metro Deaf must prove the reasonableness of its proposals in accordance with Minn.R. 1400.7300, subpt. 5.

Metro Deaf claims the MPUC's position is inconsistent because it ordered Northwestern Bell to provide additional information regarding some of Metro Deaf's proposals. Metro Deaf contends the MPUC should have requested this additional information during the contested case. We dis-

agree. Minn.Stat. § 237.081, subd. 1 (1984) allows the MPUC, on its own motion, to make a summary investigation when it believes any service may be inadequate. The MPUC's demand for additional information falls squarely within the authority granted by Minn.Stat. § 237.081 and is not inconsistent with the application of Minn.R. 1400.7300.

2. Metro Deaf contends the MPUC arbitrarily failed to address some of the proposals it made.

■ In the April 1983 order, the MPUC found the record did not provide a sufficient basis to support Metro Deaf's specific proposals. Metro Deaf does not dispute this finding. By seeking to impose on Northwestern Bell the burden of establishing that Metro Deaf's proposals are a reasonable means of remedying inadequate service for the deaf, Metro Deaf effectively acknowledges that it did not meet the burden. Since there was insufficient evidence to support the proposals, the MPUC did not err by failing to address each separately.

3. After the contested case was closed, Metro Deaf requested the MPUC to order Northwestern Bell to reimburse it for the expenses it incurred as an intervenor. The MPUC denied the request stating it lacked authority to award compensation to intervening parties. The district court affirmed the MPUC decision noting that subsequent to the case, the legislature authorized the award of intervenor fees under certain circumstances effective May 2, 1984. *See* 1984 Minn.Laws ch. 611 (codified at Minn. Stat. § 237.075, subd. 10 (1984)).

Metro Deaf contends it is entitled to the costs and attorney fees incurred after July 1, 1983. Since fees could be granted to intervenors in gas and electric rate cases after July 1, 1983, it claims chapter 611 must be construed to be retroactive to July 1, 1983. Metro Deaf contends literal application of chapter 611 constitutes an unconstitutional denial of equal protection.

■ The constitutionality of 1984 Minn. Laws ch. 611 was not raised before the district court. The trial court was aware of the statute but did not rule on its constitutionality. Metro Deaf did not raise the issue in its statement of the case to this court. We will not rule on the constitutionality of a statute when the issue was not ruled upon at the trial court. *State v. Kager*, 357 N.W.2d 369, 370 (Minn.Ct.App. 1984).

■ 4. Henry contends he was denied procedural due process and equal protection. He seeks to have this matter remanded so he can introduce additional evidence. He seeks to introduce Northwestern Bell's answers to his interrogatories and his cross-examination of the answers. He complains that he was neither cross-examined by Northwestern Bell nor the administrative law judge. He further complains that hearings were not extended so the administrative law judge could receive further testimony, the company would not stipulate that its answers to his interrogatories be made part of the record, witnesses were not available for his cross-examination, and the MPUC's findings do not address his claims.

The administrative law judge established a schedule for filing testimony and for hearings to cross-examine the testimony. The parties had ample notice of the procedures to be used. Henry submitted direct and surrebuttal testimony. He has no right to be cross-examined by any party or the administrative law judge for the purpose of supplementing his direct case. Similarly, he had no right to have the hearing kept open after the cross-examination was completed or to require Northwestern Bell to stipulate that its answers to his interrogatories be made part of the record. Henry did not subpoena witnesses and did not appear at some of the hearings. He cannot now complain that he could not cross-examine witnesses.

We believe the procedures used were adequate and that Henry had ample opportunity to submit his case in a timely manner. We hold the MPUC did not erroneously reject evidence and, therefore, will not remand this matter. Henry's claim the MPUC findings do not address his claims is

without merit. He does not allege that there is substantial evidence in the record to support any claim. When there is no substantial evidence in the record, the MPUC is not obligated to address a claim.

## DECISION

The MPUC did not err by imposing the burden of proof on Metro Deaf to show its proposals were reasonable. The MPUC did not err by failing to address some of the specific proposals made by Metro Deaf. Metro Deaf is not entitled to attorney fees. Appellant Henry was not denied due process.

Affirmed.