## HALL-VESOLE COMPANY v. DURKEE-ATWOOD COMPANY.[1]

January 7, 1949.

No. 34,746.

*Donald F. Pratt,* for appellant.
*Clarence O. Holten* and *James S. Eriksson,* for respondent.

LORING, CHIEF JUSTICE.

This is an appeal from an order denying defendant's motion for a new trial. The evidence was presented before a jury, and during the court's charge the parties agreed that three interrogatories should be submitted to the jury. All other questions involved were, by stipulation, submitted to the court for findings and conclusions upon the jury's answers to the interrogatories and the evidence in the case. Plaintiff prevailed on the interrogatories, the findings, and the conclusions of the court.

[1]Reported in 35 N. W. (2d) 601.

Hall-Vesole Company, a corporation, brought suit to recover for alleged overcharges on services performed by defendant between August 1944 and December 31, 1945, consisting of coating cloth or paper with luminous material and special adhesives in connection with a war contract awarded by the government to plaintiff's assignor and predecessor, the Hall-Vesole Company, a partnership (hereinafter referred to as Hall-Vesole), composed of Dr. Ray E. Hall, who was the technician developing the special process and supervising production; A. J. Casteleiro, the salesman; and W. M. Loberg, the auditor and financial clerk. The assets of the partnership, Hall-Vesole, including this claim against defendant for the amounts paid to defendant in excess of the agreed compensation, were acquired by plaintiff on or about May 1, 1946.

As a result of negotiations during August and September 1944, defendant agreed orally to perform coating services for the partnership at an agreed price per man hour for the time its employes were engaged in such production. At the trial, it was disputed whether the price per hour agreed upon was $3 per man hour or $3.30 per man hour. From month to month, the defendant rendered debit memoranda to the partnership for such services. These memoranda simply stated: "Spreader Room charges for [naming the month]." The writing did not state the hourly basis of compensation on which they were computed, nor the total number of man hours performed during the month for which the account was rendered. A copy of a typical memorandum appears in a footnote.[2] In addition, state-

---

[2] DURKEE-ATWOOD CO.

General Offices

MINNEAPOLIS, MINN.  U.S.A.

Sold to Hall-Vesole Company            SHIPPED TO
        2350 University Avenue
        St. Paul, Minnesota

| Date | Terms | Your Order No. | Shipped Via B/L No. | Order No. |
|------|-------|----------------|---------------------|-----------|
| 11-16-45 | | | | 6279 |
| Quantity | | Description | | Amount |

We debit your account as follows:
            Charges for October 1945
                Spreader Room—                    $182.52

ments summarizing the costs of materials, waste, salvage charges, slitting room and spreader room charges, and credits were occasionally furnished in the form set out in the footnote.[3] Defendant also maintained a ledger account sheet which showed the running account for Hall-Vesole, but did not itemize charges.[4] No "Remarks" appeared on the ledger sheets.

---

[3]In Account With
**DURKEE-ATWOOD CO.**
Manufacturers of
RUBBER AND CHEMICAL PRODUCTS
Minneapolis, Minn.

Hall-Vesole Company
2350 University Avenue
St. Paul, Minnesota

| Date | Reference | Charges | Credits | Balance |
|------|-----------|---------|---------|---------|
| | | | Balance Forward | |
| 11/16/45 | | 67.50 | | |
| 11/16/45 | | 344.43 | | |
| 11/16/45 | | 188.10 | | |
| 11/16/45 | | 182.52 | | 782.55 |

We Render Statements monthly for comparison, whether the account is due or not. If not correct please advise us.
For such an amount as is due, we will feel obliged for an early remittance

Yours very truly,
DURKEE-ATWOOD CO.

---

[4]NAME     Hall-Vesole Company
2350 University Avenue
ADDRESS     St. Paul, Minnesota
1 9 4 5

| Balance | Remarks | Date | Memo | Folio | Charges | Credits |
|---------|---------|------|------|-------|---------|---------|
| | | Feb 7 | DM | 38 63 | 37.40 | |
| 37.40 Bal | | Mar 16 | | 12 10 | | 8,366.73 − |
| 8,329.33 Cr | | | | | | |
| | | Mar 9 | DM | 39 88 | 245.53 | |
| | | Mar 9 | DM | 39 90 | 420.20 | |
| | | Mar 9 | DM | 39 91 | 3,962.20 | |
| | | Mar 9 | DM | 39 92 | 3,701.40 | |
| .00 Bal | | | | | | 12,196.66 − |

Viewing the testimony, as we must, in its aspects most favorable to plaintiff, there was evidence tending to prove that there was some discussion between the parties, but no actual agreement was made, that the method of charging for services on an hourly basis would be changed to a yardage basis when mass production was reached and development beyond the experimental state was attained. This point was reached about January 1, 1945. From then on, defendant computed its debit memoranda on that basis without so indicating on the bills or notifying plaintiff. Prior to that time, however, by oral agreement, the spreader room charges were increased about 10 percent. There was a dispute as to whether the new rate of compensation was $3.30 per man hour, as claimed by plaintiff, or whether the rate then became $3.60 per man hour, as computed by defendant, as a basis for its debit memoranda. The jury found for plaintiff. During the six-month period in 1945 when production reached a stabilized output level, bills were computed by defendant on the basis of $22.44 per 100 square yards of material given three coats of adhesive and luminous substance, and $28.17 per 100 square yards of material given four coats. After June 30, 1945, production dropped, and debit entries were computed by defendant on a basis of $3.60 per man hour, again without notifying plaintiff. Hall-Vesole paid the amounts noted on the debit memoranda as rendered, obviously on the assumption that the bills were correct and according to agreement and without checking the number of man hours or hourly rate or other basis upon which each memorandum was computed.

The court below, basing its findings upon the jury's answer to interrogatories, found that the partnership paid $36,929.19 to defendant through December 31, 1945, all of which was paid on or before June 7, 1946, and that defendant was entitled to payment for services in the spreader room in the total sum of only $26,564.41. Judgment was ordered against defendant for $10,364.78 with interest at six percent from January 3, 1947, together with costs and disbursements. Defendant was awarded $1,376.18 on a counterclaim for services performed in the spreader room and slitting room during

1946, which amount was deducted by the court from overcharges collected by defendant.

After the evidence had been presented and during the court's charge to the jury, the parties stipulated as follows:

"It is stipulated by and between plaintiff and defendant, through their respective attorneys that the court may submit to the jury the three interrogatories which are agreed upon and conditioned upon the answers the issues remaining undetermined shall be decided by the court in the findings of fact and conclusions of law based upon the answers to such interrogatories and the evidence in this case."

The three special interrogatories submitted to the jury and its answers thereto were as follows:

"I.

"When the Hall-Vesole Company and the Durkee-Atwood Company first agreed upon the price to be charged Hall-Vesole Company for spreader room service, was that agreed price $3.00 per man hour, as claimed by plaintiff, or $3.30 per man hour as claimed by the defendant? $3.00.

"II.

"When the price for spreader room services was increased on November 20, 1944, was the new agreed price $3.30 per man hour as claimed by plaintiff, or $3.60 per man hour as claimed by the defendant? $3.30.

"III.

"Did the Hall-Vesole Company at any time impliedly agree, that the charge for spreader room services for the period from January through June of 1945 should be computed on a yardage basis instead of the man-hour basis fixed on November 20, 1944? No."

Of course no general verdict was returned.

Counsel for defendant contends that the monthly memoranda rendered by defendant and paid by Hall-Vesole constituted an account stated and that it cannot be impeached or set aside on the ground of unilateral mistake; that Hall-Vesole was under a duty

to examine the accounts within a reasonable time and that, because plaintiff might have examined defendant's books, its neglect to do so estops it from asserting subsequent claims for overcharge; that the lower court should have concluded as a matter of law that plaintiff was estopped from challenging the accounts rendered; and, at any rate, that interest was improperly computed from January 3, 1947, contending that no demand for the overcharge was made until the commencement of this suit, May 6, 1947.

■ The controlling question presented for decision is whether, under the circumstances disclosed by this record, the trial court was justified in rejecting the defense of an account stated. As we view the record, the evidence falls short of establishing such an account. In Wharton v. Anderson, 28 Minn. 301, 305, 9 N. W. 860, 862, this court cited with approval Lockwood v. Thorne, 18 N. Y. 285, a case generally recognized as a clear statement of the elements necessary to constitute an account stated. The Lockwood opinion reads (18 N. Y. 288) :

"In stating an account, two things are necessary: 1st. That there be a mutual examination of the claims of each other by the parties; and 2d. That there be a mutual agreement between them, as to the correctness of the allowance and disallowance of the respective claims, and of the balance, as it is struck upon the final adjustment of the whole account and demands on both sides. The minds of the parties must meet upon the allowance of each item or claim allowed, and upon the disallowance of each item or claim rejected. They must mutually concur upon the final adjustment, and nothing short of this in substance will fix and adjust their respective demands as an account stated.

"But in proving an account stated, it is not necessary to show an express examination of the respective demands or claims of the parties, or an express agreement to the final adjustment. All this may be implied from circumstances. If the account be rendered by one party, and the other party, upon examining it, makes no objection, an inference might legitimately be drawn that he was satisfied with it, as rendered. So, also, if the account should be

made out by one party and transmitted to the other party by mail, and the latter should omit to communicate objections to the party rendering the account within a reasonable time, an inference might be drawn that he was satisfied with it. Such omission to object would therefore be legitimate evidence in proving an account stated. There is no arbitrary rule of law which renders an omission to object in a given time equivalent to an actual agreement or consent to the correctness of the account thus rendered; but it is merely competent evidence, subject to be rebutted by circumstances from which counter inferences may be drawn."

In the Wharton case, this court said (28 Minn. 305, 9 N. W. 862):

"* * * There is some confusion in the books as to the precise effect of a stated account upon the rights of the parties, but we are inclined to the opinion that it is only *prima-facie* evidence of the correctness of the balance, and not conclusive upon it, unless in arriving at the agreed balance there has been some concession made upon items disputed between the parties, so that the balance is the result of a compromise, or some act has been done or forborne in consequence of the accounting, and relying upon it, which would put the party claiming the benefit of it in a worse position than as though it had not been had, so as to bring the case within the principles of an estoppel *in pais*. A stated account, not affected by such new consideration or estoppel, may be impeached for mistake or error in law or in fact with respect to the items included in it, or for omission of items. These positions are sustained by weighty authority. Perkins v. Hart, 11 Wheat. 237 [6 L. ed. 463]; Harden v. Gordon, 2 Mason [U. S. 541] 562; Young v. Hill, 67 N. Y. 162 [23 Am. R. 99]; Thomas v. Hawks, 8 Mees. & W. 140; Wiggins v. Burkham, 10 Wall, 129 [19 L. ed. 884]; Lockwood v. Thorne, 18 N. Y. 285; Hutchinson v. Market Bank of Troy, 48 Barb. 302; Ruffner v. Hewitt, 7 W. Va. 585; 1 Story, Eq. Jur. § 524; 2 Chitty on Contracts, 962; Warner v. Myrick, 16 Minn. [81] 91."

In Swain v. Knapp, 34 Minn. 232, 235, 25 N. W. 397, 398, Mr. Justice Mitchell described an account stated as follows:

"* * * It is sufficient to make an account stated, if it be examined and accepted as such by both parties, and this acceptance need not be in writing, or even expressed, but may be implied from circumstances; and if the parties accepted this account as a full and final statement of the business up to that date, it did not become any the less final from the fact that it included certain specified uncollected accounts receivable, which were reckoned in as a part of the profits of the business."

Our subsequent opinions are in accord with Wharton v. Anderson and Swain v. Knapp, although the precise question here presented has not been directly involved. Western Newspaper Union v. Segerstrom Piano Mfg. Co. 118 Minn. 230, 136 N. W. 752; Isaacs v. Wishnick, 136 Minn. 317, 162 N. W. 297; Kelly-How-Thomson Co. v. Merritt Dev. Co. 147 Minn. 153, 179 N. W. 897; Western Gravel Co. v. M. J. Nolan Co. 174 Minn. 315, 219 N. W. 148.

The question before us resolves itself into the problem of whether the circumstances of presentation and payment, plus the lapse of time to the demand, constitute such acquiescence in the erroneous memoranda as to compel a finding that the minds of the parties met in a contract. We do not so interpret the record. The court, by denying defendant's motion for a finding of an account stated and of estoppel, in effect found to the contrary. Kiebach v. Kiebach, 227 Minn. 328, 35 N. W. (2d) 530. We think that finding is supported by the evidence. The memoranda rendered were not itemized and on their face showed no basis for the computation used by defendant in arriving at the total.[5] Since there was nothing on the face of the memoranda to indicate a mistake or overcharge,[6] the payments thereof were ineffective to constitute acquiescence suf-

[5]Cf. Newburger-Morris Co. v. Talcott, 219 N. Y. 505, 512, 114 N. E. 846, 848, 3 A. L. R. 287; Davis v. Arnold, 267 Mass. 103, 111, 165 N. E. 885, 888; Caveney v. Caveney, 234 Wis. 637, 648-649, 291 N. W. 818, 824; Perkins v. Hart, 24 U. S. (Wheat.) 237, 256-257, 6 L. ed. 463, 468; Harden v. Gordon (1 Cir.) (1823) 2 Mason (U. S.) 541, 562-563. See Annotation, 84 A. L. R. 114, 117.

[6]See footnotes 2 and 3, *supra*.

ficient to compel a finding of an account stated. Hall-Vesole simply assumed that the memoranda were computed according to contract and paid them without question. They did not discover the error until about November 15, 1946, when defendant sought to collect two large bills from Hall-Vesole Company, which aroused the suspicions of its part-time bookkeeper as to correctness. This resulted in plaintiff's checking completely—and for the first time—defendant's records and the discovery of the overcharges. No prejudice to defendant is shown by the delay in discovering the overcharges or in demanding repayment.

■ There is evidence tending to prove that some time prior to January 3, 1947, demand was made for repayment of the excess charges.

Order affirmed.