SCHROEDER, SIEGFRIED, RYAN & VIDAS, a partnership, Respondent,

v.

MODERN ELECTRONIC PRODUCTS, INC., Defendant,

APPEAL OF AMALGAMATED ENERGY CORPORATION,

Nos. 50015, 50052.

Supreme Court of Minnesota.

June 20, 1980.

Thompson, Nielsen, Klaverkamp & James and Howard S. Myers, III, Minneapolis, for appellant.

Moss, Flaherty, Clarkson & Fletcher and David B. Morse, Minneapolis, for respondent.

Heard before KELLY, YETKA, and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Plaintiff law firm brought suit seeking to foreclose on an attorney's charging lien on a patent owned by the defendant. Plaintiff contended that the lien had arisen out of work done by plaintiff in connection with the application for the patent to the United States Patent Office. After a court trial, the Hennepin County District Court ruled that the lien attached to the patent, and ordered that the patent be sold to satisfy the lien. The defendant then made a motion for a new trial, which was summarily denied, and judgment was ordered for the plaintiff. The defendant now appeals from that order. We affirm.

The facts are stipulated. Briefly, the plaintiff, between December 1971 and February 1973, performed legal services in connection with the application of one Lloyd Whitely, an inventor, for a patent covering an innovation in wave distribution techniques in microwave ovens. At this time, plaintiff also represented Modern Electronic Products, Inc. The actual application for the patent was filed with the United States Patent Office on February 28, 1972. The plaintiff had no agreement with either Whitely or Modern Electronic Products that it was to look to the patent for satisfaction of its attorney's fees with regard to services rendered in obtaining it.

On April 12, 1973, the plaintiff filed a Notice of Attorney's Lien on the patent application with the County Recorder of Hennepin County, Minnesota. On July 2, 1973, Whitely assigned all his interest in the patent application to Modern Electronic

Products, Inc. On July 17, 1973, the patent (No. 3,746,823) was granted.

The plaintiff instituted action on August 11, 1977, to establish its claim to a valid attorney's lien on patent 3,746,823, and to foreclose that lien. On December 1, 1977, Modern Electronic Products, Inc., assigned all its interest in the patent to the current appellant, Amalgamated Energy Corporation, who was thereafter added as a party defendant to the action. A trial was held on December 19, 1978, after which the trial court ruled that the lien applied to the patent and that the patent should be sold to satisfy the attorney's fees. The court also found the reasonable amount of attorney's fees to be $5,889.75. The court then ordered judgment accordingly,[1] and stayed entry of judgment for 10 days. Defendant subsequently brought a post-trial motion for a new trial. The trial court, on February 23, 1979, denied this motion, extended the stay of entry of judgment, and set the amount of the supersedeas bond on appeal. The defendant now appeals from the February 23 order.

The issue on this appeal has been narrowed by agreement of the parties to whether the attorney's statutory charging lien pursuant to Minn.Stat. § 481.13, subd. 3 (1974) (currently codified at § 481.13, subd. 1) applied to secure attorney's fees in connection with services rendered in pursuing the application for a patent before the United States Patent Office.

The plaintiff argues that it has a statutory attorney's charging lien on the patent received by defendant's predecessor in interest, and obtained in part because of plaintiff's work on the application for the patent. Plaintiff based its argument on Minnesota's charging lien statute, Minn. Stat. § 481.13, subd. 3 (1974) (currently codified as § 481.13, subd. 1), which reads in relevant part:

An attorney has a lien for his compensation whether the agreement therefor be expressed or implied:

\* \* \* \* \* \*

---

1. The amount of the lien was to be the $5,889.75, plus $54.00 for costs and 6 percent annual interest from April 11, 1973, the date of notice of the attorney's lien.

(3) Upon the cause of action from the time of the service of the summons therein, or the commencement of the proceeding, and upon the interest of his client in any money or property involved in or affected by any action or proceeding in which he may have been employed, from the commencement of the action or proceeding, and, as against third parties, from the time of filing the notice of such lien claim, as provided in this section;

■ Although the attorney's charging lien existed at common law and at equity, it is now wholly governed by statute. *See Village of New Brighton v. Jamison,* 278 N.W.2d 321 (Minn.1979); *Akers v. Akers,* 233 Minn. 133, 46 N.W.2d 87 (1951). Historically the general theory behind the charging lien was that a successful plaintiff should not be permitted the whole of any judgment secured by the services of his attorney without paying for those services. Note, *Attorney vs. Client, Lien Rights and Remedies in Tennessee,* 7 Memphis St.L. Rev. 435, 446 (1977); *see Blazek v. North American Life & Casualty Co.,* 265 Minn. 236, 240, 121 N.W.2d 339, 342 (1963). The lien only applies to charges by the attorney for services in connection with the particular action or proceeding involved and not to a client's general account. *Village of New Brighton v. Jamison,* 278 N.W.2d at 324. Plaintiff contends that, by applying to the Patent Office for the issuance of a patent on behalf of defendant's predecessor in interest, it had commenced a "proceeding" under section 481.13, and that the patent was "property involved in or affected by" that proceeding. Defendant argues that "proceeding" as used in the statute was not meant to apply to a nonjudicial proceeding. The issue thus becomes whether the word "proceeding" in section 481.13 is broad enough to cover the procedures of the United States Patent Office upon the application for a patent.

■ Statutory words and phrases are to be construed according to their common and approved usages unless such a construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute. Minn.Stat. § 645.-08(1) (1978). The Eighth Circuit Court of Appeals has described the common meaning of the word "proceeding" as follows:

"Proceeding" is a comprehensive term meaning the action of proceeding—a particular step or series of steps, adopted for accomplishing something. This is the dictionary definition as well as the meaning of the term in common parlance. Proceedings before a governmental department or agency simply mean proceeding in the manner and form prescribed for conducting business before the department or agency, including all steps and stages in such an action from its inception to its conclusion.

*Rice v. United States,* 356 F.2d 709, 712 (8th Cir. 1966) (footnote omitted). Thus "proceeding" is a broader term than "action" and does not necessarily exclude the conduct of business before a nonjudicial body. *See State ex rel. Johnson v. Independent School District No. 810,* 260 Minn. 237, 245, 109 N.W.2d 596, 602 (1961). The word proceeding in its ordinary usage may also apply to review of applications.[2]

■ We hold that the word "proceeding" in section 481.13 is broad enough to include the procedures involved in pursuing an application for a patent before the United States Patent Office.[3] The trial court is accordingly affirmed.

---

**2.** *See United States v. Abrams,* 427 F.2d 86, 90 (2d Cir.) (application to the Immigration and Naturalization Service (INS) for voluntary departure is "proceeding" under statute prohibiting the influencing of a witness before the INS), *cert. denied,* 400 U.S. 832, 91 S.Ct. 64, 27 L.Ed.2d 63 (1970); *Cardinali v. Planning Board,* 373 A.2d 251, 253 (Me.1977) (application for subdivision approval is a "proceeding" under a general savings clause).

**3.** The line of New York cases following *In re Albrecht,* 225 App.Div. 423, 233 N.Y.S. 383 (1929), is distinguishable. In *Albrecht,* the court held that procedures before the United States Board of Tax Appeals did not constitute an "action or special proceeding" under a New York statute providing:

From the commencement of an action or special proceeding, or the service of an answer containing a counterclaim, the attorney

who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosoever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment or final order. The court upon the petition of the client or attorney may determine and enforce the lien.

225 App.Div. at 424, 233 N.Y.S. at 385 (quoting N.Y.Jud.Law § 475). The *Albrecht* holding was based primarily on the ground that the phrase "action or special proceeding" did not include nonjudicial matters. *See* 225 App.Div. at 424– 25, 233 N.Y.S. at 385–86; *In re Estate of Levine*, 154 Misc. 700, 702–03, 278 N.Y.S. 36, 40 (Sur.Ct.1935). The New York statute under which *Albrecht* was decided differs from section 481.13 in that the New York statute bristles with judicial language, giving an attorney a lien only upon a client's "cause of action, claim or counterclaim" and the "proceeds" thereof and not additionally, as does section 481.13, upon a client's interest in any property "involved in or affected by any action or proceeding in which [the attorney] may have been employed." The latter is broader language and does not imply a limitation to judicial actions as does the New York statute.