George M. ROEHRDANZ, Appellant,

v.

Jerome Harvey SCHLINK, Respondent.

No. C2–84–2230.

Court of Appeals of Minnesota.

June 4, 1985.

George M. Roehrdanz, Minneapolis, pro se.

Gary Goldsmith, Kimary S. Knutson, Roehrdanz, Goldsmith & Malone, Minneapolis, for appellant.

Robert Edwards, Dorn Law Firm, Ltd., Anoka, for respondent.

Heard, considered, and decided by PARKER, P.J., and LANSING and HUSPENI, JJ.

## OPINION

LANSING, Judge.

Appellant George Roehrdanz appeals from a judgment denying his request for an attorney's lien under Minn.Stat. § 481.-13. The determination was based on a referee's report after an evidentiary hearing which was reviewed and approved by the trial court under Minn.R.Civ.P. 53.05(2). We affirm.

## FACTS

In late 1979 Jerome Schlink retained George Roehrdanz to represent him in a marriage dissolution and other matters not relevant to this appeal. The lengthy and sharply contested dissolution proceeding involved the custody of one child and a relatively small amount of property.

Roehrdanz represented Schlink for about two and one-half years and charged him approximately $19,000 for dissolution-related legal services in 15 separate billings. Schlink paid a large portion without objection. In June 1982 he dismissed Roehrdanz as his attorney, leaving approximately $8,000 which had been billed but not paid. In July Roehrdanz billed him again for the balance and added about $500 for post-dismissal phone calls, conversations, and photocopies. Roehrdanz brought a petition to establish an attorney's lien of $8,124.15 on non-homestead property involved in the divorce.

Schlink claimed that Roehrdanz did not reveal the rates he was charging until early 1982, when Schlink pressed him for the information. Roehrdanz claims that he informed Schlink at their first meeting that he would be charged the regular office rate of $75/hour with a higher rate for contested motions, trial work, and emergency work, and a lower rate for clerk time. The actual rates charged in addition to the basic rate were $45/hour, $100/hour, $125/hour, $133/hour, and $200/hour. The regular office rate was increased to $85/hour in January 1981. Roehrdanz does not dispute that Schlink was not informed of this change or of the exact dollar amounts of the higher rates until early 1982.

In response to Roehrdanz's motion for a lien, Schlink counter-moved for a refund because of overcharging and requested that the matter be submitted to the Hennepin County Bar Association for binding fee arbitration. The trial court granted the arbitration request. Roehrdanz, however, refused to agree to arbitration. The order was then vacated and the matter referred to a special term referee for an evidentiary hearing.

The referee denied Roehrdanz's request for a lien, finding that the fees already paid were sufficient compensation for the legal services rendered. Roehrdanz filed a motion for review of and objection to the referee's report under Minn.R.Civ.P. 53.-05(2). The trial court approved the report and ordered a full satisfaction of attorney's lien forwarded to Schlink's attorney. Roehrdanz appeals from a judgment entered September 26, 1984.

## ISSUES

Did the trial court err in denying Roehrdanz's request for an attorney's lien after determining that the fees already paid by Schlink were sufficient compensation for the legal services rendered?

## ANALYSIS

Roehrdanz requested a lien under Minn.Stat. § 481.13, subd. 2, which allows an attorney's lien on a judgment when a client has agreed to pay but does not. The provision does not create an agreement to pay. *See Boline v. Doty*, 345 N.W.2d 285, 288 (Minn.Ct.App.1984).

Roehrdanz argues that under § 481.13 the court is limited to determining whether or not a lien should be granted and that therefore its determination that the fees already paid were sufficient exceeded its power under the provision. However, this argument contradicts the express language of § 481.13, which reads:

> The liens provided by clauses (1) and (2) may be established, *and the amount thereof determined*, by the court, summarily, in the action or proceeding, on the application of the lien claimant or of any person or party interested in the property subject to such lien, on such notice to all parties interested therein as the court may, by order to show cause, prescribe, or such liens may be enforced, *and the amount thereof determined*, by the court, in an action for equitable relief brought for that purpose.
>
> Judgment shall be entered under the direction of the court, adjudging the amount due.

(Emphasis added). The provision clearly contemplates that courts will determine the appropriate amount when establishing or enforcing attorney's liens. *See also Boline v. Doty*, 345 N.W.2d at 289. In this case the referee concluded that no lien was appropriate because Roehrdanz had already been paid a reasonable attorney's fee. *See Kittler & Hedelson v. Sheehan Properties, Inc.*, 295 Minn. 232, 236–37, 203 N.W.2d 835, 839 (1973).

Roehrdanz further argues that he was improperly denied the right to a jury trial. Although parties must be given an adequate opportunity to contest the facts regarding fees, *see Boline v. Doty*, 345 N.W.2d at 289, they are not entitled to a jury trial. The statute codifies the common-law charging lien and provides for a summary determination. Because an action to enforce a charging lien is equitable in nature, there is no right to a jury trial. *Village of New Brighton v. Jamison*, 278 N.W.2d 321, 325 (Minn.1979). Roehrdanz could have sued Schlink directly for the alleged balance; instead, he proceeded voluntarily under § 481.13 and must be deemed to have accepted its procedures.

The referee found that there was no written fee agreement between Roehrdanz and Schlink. Roehrdanz argues that the referee's findings improperly failed to address an oral fee agreement existing between the parties, citing as evidence his discussion with Schlink at the beginning of their relationship in which he informed Schlink of the basic hourly rate. Although this discussion indicates an agreement to establish a professional relationship, it cannot be construed as an agreement to pay whatever was charged, particularly in light of the evidence that Schlink was unaware of any but the basic hourly rate and was not informed of the time spent or the charge allocated to any particular service.

Roehrdanz also argues that the referee made an error of law in not applying the doctrine of account stated because no specific finding was made on this issue. Existence of an account stated requires "mutual examination of the claims of each other by the parties" and a "mutual agreement between them, as to the correctness of the allowance and disallowance of the respective claims, and of the balance." *Hall-Vesole Co. v. Durkee-Atwood Co.*, 227 Minn. 379, 384, 35 N.W.2d 601, 604 (1949). Again, Schlink had no knowledge of any specific rates except for the basic hourly rate, he was not informed of a change in that rate when it occurred, and the bills he received did not itemize the charges for specific services. In addition, the record indicates that Schlink was unaware he was being billed for the post-dismissal conversations with Roehrdanz. Although the referee did not make a specific finding on the doctrine of account stated, the trial court said, and we agree, that a negative finding

on this issue was implicit in the referee's determination that the fees paid were sufficient. We cannot say the referee clearly erred.

## DECISION

 The trial court did not err in denying Roehrdanz's request for an attorney's lien after determining that the amount Schlink had already paid was sufficient compensation for legal services rendered. We deny Schlink's motion for attorney's fees on appeal.

Affirmed.