THOMAS A. FOSTER & ASSO-
CIATES, LTD, petitioner,
Respondent,

v.

Scott PAULSON, et al., Appellants.

No. A04–2132.

Court of Appeals of Minnesota.

June 28, 2005.

Thomas A. Foster, Thomas A. Foster & Associates, LTD, Minneapolis, MN, for respondent.

Phillip Gainsley, Minneapolis, MN, for appellants.

Considered and decided by WRIGHT, Presiding Judge; KALITOWSKI, Judge; and PORITSKY, Judge.*

## OPINION

WRIGHT, Judge.

To collect outstanding legal fees, respondent law firm moved to establish and determine the amount of an attorney lien under Minn.Stat. § 481.13 (2004). Appellants, former clients of respondent, argued that, because respondent forfeited the attorney fees by committing legal malpractice, a lien cannot be established. The district court declined to consider appellants' allegations of legal malpractice and breach of fiduciary duty in a summary proceeding and determined the amount of attorney fees incurred pursuant to the retainer agreement. Appellants now contend that the district court erred in failing to consider their claims. Appellants also move to supplement the record with a letter from respondent's insurance carrier and to recover attorney fees for expenses incurred in drafting the motion. We affirm and deny the motions.

## FACTS

In February 2003, appellants Scott and Bernadette Paulson (the Paulsons) retained respondent Thomas A. Foster & Associates, LTD (Foster) to represent them in a construction-arbitration action against the builder of their residence. The parties entered into a retainer agreement, whereby the Paulsons agreed to pay Foster a $10,000 non-refundable retainer fee and 25 percent of any dollar amount recovered in the litigation.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

In May 2004, the Paulsons recovered $118,952 in settlement of their claims. Shortly thereafter, the Paulsons refused to pay Foster the attorney fees and costs contemplated in the retainer agreement, alleging that Foster committed legal malpractice and breached its fiduciary duty to them. On May 20, 2004, Foster served the Paulsons with notice of an attorney lien.

In June 2004, the construction company issued a check for the settlement amount payable to the Paulsons and Foster. Foster endorsed the check but requested that the Paulsons' new counsel hold in trust the disputed attorney fees and costs.

Foster then brought a motion under Minn.Stat. § 481.13, subd. 1(c) (2004), to determine the amount of the attorney lien and enter judgment on the lien. At the hearing on the motion, the Paulsons argued that Foster forfeited its right to attorney fees and costs when, acting in bad faith, it failed to inform the Paulsons of an expert witness's impeachable background and failed to convey settlement offers. In support of their claims, the Paulsons proffered two expert affidavits. The Paulsons requested that the district court either stay entry of judgment on the lien until the malpractice and fiduciary-duty claims were litigated or "declare that there has been a lawsuit, complete forfeiture [of] fees and [turn the money] over to Mr. and Mrs. Paulson." Immediately following the hearing, the Paulsons served Foster with a complaint alleging malpractice, breach of fiduciary duty, breach of contract, and deceit and collusion.

The district court declined to order forfeiture of the fees or "declare that there ha[d] been a lawsuit" without a decision on the merits of the legal-malpractice claims. Instead, based on the terms of the retainer agreement, the district court entered judgment in favor of Foster for $30,204.56.

Aware of the Paulsons' intent to sue Foster for legal malpractice, the district court ordered Foster to verify that its malpractice insurer would accept defense of the Paulsons' malpractice claim before disbursing the fees. The district court received the requisite verification on October 26, 2004. Upon receiving the letter, the Paulsons moved to stay the entry of judgment pending further clarification as to whether Foster's insurance would cover the non-malpractice claims in their complaint. The district court interpreted the Paulsons' letter as a motion for reconsideration, which it denied. This appeal followed.

## ISSUES

I. Did the district court err in establishing and determining the amount of an attorney lien without considering appellants' professional-malpractice claims?

II. May appellants supplement the record with a letter from respondent's insurer regarding coverage for appellants' professional-malpractice claims?

III. May appellants recover attorney fees incurred in bringing the motion to supplement the record?

## ANALYSIS

### I.

█ Application of the attorney-lien statute is a question of law, which we review de novo. *Boline v. Doty,* 345 N.W.2d 285, 288–90 (Minn.App.1984). Although the reasonable value of attorney fees is a question of fact, *Ashford v. Interstate Trucking Corp.,* 524 N.W.2d 500, 502 (Minn.App.1994), when considering whether the district court employed the proper method to calculate the amount of an attorney lien, we undertake a de novo review, *In re L-tryptophan Cases,* 518 N.W.2d 616, 619 (Minn.App.1994).

The Paulsons challenge the district court's calculation of the amount of the attorney lien, arguing that Foster is not entitled to any attorney fees because it committed professional misconduct. Foster maintains that the district court properly awarded attorney fees based on the terms of the retainer agreement. The arguments here present a novel question, namely whether the district court is required to entertain a legal-malpractice defense in a summary proceeding to establish and determine the amount of an attorney lien.

### A.

■ We first examine the nature of the attorney-lien proceeding under Minn. Stat. § 481.13 (2004). Derived from common law and later codified in statute, an attorney lien attaches to any recovery by the attorney in the course of representation.[1] Minn.Stat. § 481.13, subd. 1(a), (b); *Boline*, 345 N.W.2d at 289. Thus, if a client recovers money as a result of an attorney's services, the attorney has a lien on the recovery as security for fees owed by the client. *St. Cloud Nat'l Bank & Trust Co. v. Brutger*, 488 N.W.2d 852, 855 (Minn.App.1992), *review denied* (Minn. Nov. 17, 1992).

■■ As an equitable lien, the attorney lien protects against a successful party receiving a judgment secured by an attorney's services without paying for those services. *Johnson v. Blue Cross & Blue Shield of Minn.*, 329 N.W.2d 49, 53 (Minn. 1983); *Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods., Inc.*, 295 N.W.2d 514, 516 (Minn.1980). Because this form of lien is based on principles of equity, the nature of the attorney lien and the procedure for enforcing it differ from most other liens. *Blazek v. N. Am. Life & Cas. Co.*, 265 Minn. 236, 240, 121 N.W.2d 339, 342 (1963).

■ Minn.Stat. § 481.13 governs attorney liens and provides in relevant part:

(a) An attorney has a lien for compensation ... (1) upon the cause of action ... and (2) upon the interest of the attorney's client in any money or property involved in or affected by any action or proceeding in which the attorney may have been employed....

(b) An attorney has a lien for compensation upon a judgment, whether there is a special express or implied agreement as to compensation, or whether a lien is claimed for the reasonable value of the services....

(c) A lien provided by paragraphs (a) and (b) may be established, and the amount of the lien may be determined, summarily by the court under this paragraph on the application of the lien claimant or of any person or party interested in the property subject to the lien.

Judgment shall be entered under the direction of the court, adjudging the amount due.

Minn.Stat. § 481.13, subd. 1. Subdivision 1 grants an attorney an inchoate lien on a recovery obtained through his or her efforts on behalf of a client. 7A C.J.S. *Attorney & Client* § 450 (2004). The attorney may petition a district court to establish the lien, determine the proper

---

**1.** An attorney lien may be classified in one of two categories: the retaining lien and the charging lien. Barbara C.S. Shea, *Attorney Liens: A Practical Overview*, 6 U. Bridgeport L. Rev. 77, 80 (1985). Although Minnesota recognized both types of attorney liens at common law, *Akers v. Akers*, 233 Minn. 133, 138, 46 N.W.2d 87, 91 (1951), the legislature abolished the retaining lien in 1976, 1976 Minn. Laws ch. 304, § 2. But the charging lien remains. Minn.Stat. § 481.13; *St. Cloud Nat'l Bank & Trust Co. v. Brutger*, 488 N.W.2d 852, 855 (Minn.App.1992), *review denied* (Minn. Nov. 17, 1992).

amount of the lien, and enter judgment accordingly. *N. States Power Co. v. Gas Servs. Inc.*, 690 N.W.2d 362, 365–66 (Minn.App.2004); *Empro Corp. v. Scottland Hotels, Inc.*, 449 N.W.2d 734, 737 (Minn.App.1990). The value of the lien ordinarily is determined based on the terms of the fee provisions of a retainer agreement. *Blazek*, 265 Minn. at 240, 121 N.W.2d at 342–43. When such an agreement does not exist, the amount of the lien is determined by the reasonable value of the services rendered. *Roehrdanz v. Schlink*, 368 N.W.2d 409, 412 (Minn.App.1985).

Minnesota caselaw has long characterized attorney-lien actions as summary proceedings. *See, e.g., Vill. of New Brighton v. Jamison*, 278 N.W.2d 321, 323–24 (1979); *Akers v. Akers*, 233 Minn. 133, 138, 46 N.W.2d 87, 91 (1951); *Westerlund v. Peterson*, 157 Minn. 379, 381–82, 197 N.W. 110, 111 (1923). Section 481.13 specifies that the proceeding to establish and determine the amount of the lien will be conducted "summarily" upon application of the lien claimant. Minn.Stat. § 481.13, subd. 1(c); *In re L-tryptophan Cases*, 518 N.W.2d at 622 (holding that district court may establish and enforce lien in one summary action); *Gaughan v. Gaughan*, 450 N.W.2d 338, 343 (Minn.App.1990) (noting that "proceedings under Minn.Stat. § 481.13 retain their summary nature"), *review denied* (Minn. Mar. 16, 1990).

The 2002 amendment to section 481.13 further clarified that an attorney-lien action will be conducted summarily regardless of the location and timing of the proceeding. 2002 Minn. Laws ch. 403, § 2; *N. States Power Co.*, 690 N.W.2d at 365–66. Prior to this amendment, section 481.13 distinguished between a hearing in the original action to establish and determine the amount of an attorney lien and a separate action to enforce an attorney lien.

Minn.Stat. § 481.13, subd. 1 (2000). Interpreting the predecessor statute, we concluded that a proceeding to establish the attorney lien was summary, but the separate proceeding to enforce the lien was not. *Boline*, 345 N.W.2d at 289. The amended version of section 481.13 eradicated the distinction between establishment and enforcement, stating only that a lien may be established and its amount determined summarily "by the court." Minn.Stat. § 481.13, subd. 1(c) (2004). From the plain language of the statute, considered in light of its amendment by the legislature, we conclude that the legislature intended the proceeding to establish and enforce an attorney lien to be summary. After the value of the lien has been determined, the district court enters judgment for the amount due. *Id.; see Fischer–Hansen v. Brooklyn Heights R.R. Co.*, 173 N.Y. 492, 66 N.E. 395, 398 (1903) (stating that money judgment follows "enforcement" of attorney lien because foreclosure is unnecessary when subject of lien has been converted into money).

**B.**

Having concluded that the establishment and enforcement of an attorney lien under Minn.Stat. § 481.13 are to be conducted summarily, we next consider whether a district court must entertain a legal-malpractice defense when calculating the amount of the lien. The term "summarily" means in a "summary proceeding." *Vill. of New Brighton*, 278 N.W.2d at 325; *Boline*, 345 N.W.2d at 289. A summary proceeding is "any proceeding by which a controversy is settled . . . in a prompt . . . manner, without the aid of a jury." *Boline*, 345 N.W.2d at 289 (quoting *Black's Law Dictionary* 1084 (rev. 5th ed. 1979)); *see also Roehrdanz*, 368 N.W.2d at 412 (holding that there is no right to jury trial in summary proceeding to establish or enforce attorney lien). Summary proceed-

ings characteristically are immediate and tend to abridge formal procedures. *Boline*, 345 N.W.2d at 289.

We have considered the appropriate balance between fairness and the summary nature of an attorney-lien proceeding. Although section 481.13 is silent as to permissible defenses in an action to establish and determine the amount of an attorney lien, we have held that due process requires that the procedure employed afford the parties a meaningful opportunity to be heard. *Id.; Gaughan*, 450 N.W.2d at 343.

█ Here, the district court declined to consider evidence that Foster breached its fiduciary duty and committed legal malpractice, reserving these issues for the pending malpractice suit. We agree with the Paulsons' contention that Foster's alleged misconduct may be relevant to calculating attorney fees. *Rice v. Perl*, 320 N.W.2d 407, 411 (Minn.1982) ("[A]n attorney at law who is unfaithful in the performance of his duties forfeits his right to compensation."). Nevertheless, the practicalities of a summary proceeding do not support the notion that a district court must transform an attorney-lien proceeding into a legal-malpractice trial.

█ To state a prima facie case for legal malpractice, a client must demonstrate (1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; and (4) that but for the malpractice defendant's conduct, the malpractice plaintiff would have been successful in the prosecution or defense of the action. *Noske v. Friedberg*, 670 N.W.2d 740, 742–43 (Minn.2003). Establishing causation is particularly onerous here because the Paulsons must demonstrate that they would have received a much larger award or settlement in the construction-arbitration action but for Foster's negli-

gence. *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 409 (Minn.1994). To do so, the parties must try a case (the construction lawsuit) within a case (the malpractice lawsuit). *Id.* Reconstructing and assessing the merits of one lawsuit within an action to establish and determine the amount of an attorney lien is patently inconsistent with the statutory language prescribing that an attorney-lien action be conducted "summarily by the court." Minn.Stat. § 481.13, subd. 1(c). We note that in those jurisdictions that permit legal malpractice to be raised as a defense to establishment of an attorney lien, the governing statutes do not expressly provide for a summary proceeding. *See, e.g.*, Idaho Code § 3–205 (Michie 2004); Iowa Code §§ 602.10116—.10118 (2001); N.J. Stat. Ann. § 2A:13–5 (West 2000); N.Y. Jud. Law § 475 (McKinney 2005); Tenn. Code Ann. § 23–2–102, –103 (1994).

The Paulsons rely on *Boline* and *Gaughan* to support their claim that the district court was required to consider the legal-malpractice defense. But this case differs significantly from the facts in *Boline* and *Gaughan*. In neither *Boline* nor *Gaughan* did the client raise a defense or counterclaim of professional misconduct, breach of fiduciary duty, or legal malpractice. Rather, the client contested the factual basis for calculating the amount of the fees. The *Boline* court reversed the amount of the attorney lien and remanded to permit the clients to litigate "their good-faith claim that the attorney's fees were excessive." 345 N.W.2d at 290. In *Gaughan*, we remanded to permit cross-examination on the amount of time devoted to the case and the value of the services rendered. 450 N.W.2d at 343. Litigating the number of hours worked, the reasonableness of an hourly fee, or the existence of a contract in the first instance is not unduly burdensome in a summary pro-

ceeding before a district court. Here, the Paulsons do not contest the services rendered or the amount of time Foster worked on their case. Rather, the Paulsons, who are dissatisfied with the quality of the services that Foster provided, sought to litigate complex questions of professional misconduct and legal malpractice.

To litigate the Paulsons' claims fully, the parties would need to offer expert witness testimony on complicated issues of causation and damage. Entertaining such claims in a proceeding under Minn.Stat. § 481.13 would impermissibly transform a summary-lien proceeding into a lengthy malpractice trial. Indeed, some questions fall beyond the scope of a summary proceeding. *See Fidelity & Deposit Co. v. Riopelle*, 298 Minn. 417, 421, 216 N.W.2d 674, 677 (1974) (concluding that not all controversies arising out of claims of different parties to registered land are to be settled in summary proceeding); *McCabe Bros. Co. v. Farmers' Grain & Supply Co.*, 172 Minn. 33, 34–35, 214 N.W. 764, 764 (1927) (holding that, in action to assess amount of corporate stock, it was beyond scope of summary proceeding to consider evidence regarding identity of stockholders). Further, when another process to litigate defenses or counterclaims is available, it is preferable to litigate those matters outside a summary proceeding. *See Fraser v. Fraser*, 642 N.W.2d 34, 40–41 (Minn.App.2002) (holding that, if possible, equitable claims and defenses should be litigated in alternate civil action, rather than in summary eviction action); *Amresco Residential Mortgage Corp. v. Stange*, 631 N.W.2d 444, 445–46 (Minn.App.2001) (same). Here, when the attorney-lien hearing commenced, the Paulsons had already prepared a complaint sounding in malpractice, which was served immediately thereafter. The proceeding available in the civil malpractice action is preferable to that of a summary lien proceeding. More-

over, Foster's exercise of its attorney-lien rights will not preclude the Paulsons from prevailing on a malpractice claim, should the facts support the claim. James T. Flaherty, *Attorney Liens and the Code of Professional Responsibility*, 14 J. Legal Prof. 137, 148 (1989).

The plain language of the Minnesota attorney-lien statute, Minn.Stat. § 481.13, provides for a summary proceeding to establish and enforce a lien. Consideration of complex questions of professional negligence in the lien action is contrary to the legislative intent expressed in the language of the statute. Because neither section 481.13 nor Minnesota caselaw compels the district court to consider a breach-of-fiduciary-duty or legal-malpractice defense in an attorney-lien action, the district court did not err when it declined to entertain the legal-malpractice and breach-of-fiduciary-duty claims and instead determined the amount of the attorney lien based on the uncontested retainer agreement. *See Akers*, 233 Minn. at 136, 46 N.W.2d at 89 (stating that district court has discretion to determine attorney lien summarily or to require client to pursue legal remedy). Since the district court did not address the Paulsons' legal-malpractice and breach-of-fiduciary-duty claims in the attorney-lien action, the Paulsons are not barred from litigating these claims in the separate civil suit they have commenced.

## II.

The Paulsons move to supplement the record with a letter from Foster's malpractice insurer addressing the extent of Foster's insurance coverage. The papers filed in the district court, the exhibits received in evidence, and the transcript of the proceedings, if any, shall constitute the record on appeal. Minn. R.

Civ.App. P. 110.01. An appellate court ordinarily may not consider matters outside the record. *Thiele v. Stich,* 425 N.W.2d 580, 582–83 (Minn.1988). Although we may consider extra-record documentary evidence that has conclusive value and that supports the result obtained at the district court, *In re Livingood,* 594 N.W.2d 889, 895–96 (Minn.1999), such evidence may not serve as the basis for reversing the district court's decision, *Plowman v. Copeland, Buhl & Co.,* 261 N.W.2d 581, 584 (Minn.1977). The letter is not pertinent to the issue presented on appeal, namely whether Minn.Stat. § 481.13 compels a district court to consider legal-malpractice and breach-of-fiduciary-duty claims in a summary proceeding to establish and determine the amount of an attorney lien. We, therefore, deny the motion.

## III.

■■■■ The Paulsons also move pursuant to Minn. R. Civ.App. P. 139.06 for attorney fees incurred in filing their motion to supplement the record on the basis that Foster intentionally concealed the letter regarding insurance coverage. An appellate court may award attorney fees when the appeal is frivolous or in bad faith. *Brett v. Watts,* 601 N.W.2d 199, 202 (Minn.App.1999), *review denied* (Minn. Nov. 17, 1999). But when there is no evidence of a party's intent to delay proceedings or increase costs, an award of attorney fees is not appropriate. *Glass Serv. Co. v. Progressive Specialty Ins. Co.,* 603 N.W.2d 849, 853 (Minn.App.2000).

The record does not demonstrate bad faith or intent to delay the proceedings. Moreover, the Paulsons are not entitled to attorney fees for preparing a motion to supplement the record with a document that is not pertinent to the issue on appeal.

## DECISION

In a summary proceeding to establish and determine the amount of an attorney lien under Minn.Stat. § 481.13 (2004), the district court was not required to entertain defenses of legal malpractice and breach of fiduciary duty. The district court did not err in declining to entertain these claims in a summary attorney-lien proceeding.

**Affirmed; motions denied.**