*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1699**

Kenneth A. Roseland, et al.,
Respondents,

Law Offices of Richard E. Bosse, Chartered,
Appellant,

vs.

Joseph A. Wentzell, Attorney at Law, et al.,
defendants,

Richard L. Kusick, et al.,
Respondents,

and

Roseland Acres, LLC, et al.,
third party plaintiffs,
Respondents,

vs.

Eric Brever, Attorney at Law, et al.,
third party defendants.

**Filed May 18, 2015
Reversed and remanded
Schellhas, Judge**

Pine County District Court
File No. 58-CV-12-479

Kenneth A. Roseland, et al., Moose Lake, Minnesota (pro se respondents)

Richard E. Bosse, Law Offices of Richard E. Bosse, Chartered, Henning, Minnesota (for appellant)

Robert L. Meller, Jr., Joseph J.W. Phelps, Best & Flanagan LLP, Minneapolis, Minnesota (for respondents Richard L. Kusick, et al. and Roseland Acres, et al.)

Considered and decided by Hooten, Presiding Judge; Schellhas, Judge; and Stauber, Judge.

## UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the district court's denial of statutory attorney liens. We reverse and remand.

## FACTS

Respondents Kenneth and Diana Roseland own farmland identified as parcels A through E in Pine County and parcels F and G in Carlton County.[1] To secure loans from First National Bank, Roselands granted First National mortgages on parcels A, B, and G. In January 2008, First National mailed to Roselands formal notice of their default on the loans. In March, First National served Roselands with notice of mortgage foreclosure sale by advertisement of parcels A and B and sued Roselands for judicial foreclosure of parcel G. First National purchased parcels A and B at a sheriff's sale on May 22. Regarding parcel G, the district court entered summary judgment for First National in the judicial foreclosure action.

---

[1] In April 2009, the appraised value of the farmland was $1.2 million.

Joseph Wentzell and Wentzell Law Office P.L.L.C. (individually or collectively, Wentzell) represented Roselands in the foreclosure proceedings. In April 2009, Wentzell contacted respondents Richard Kusick, Lauris Valtinson, and James Christian and proposed their entry in a transaction that would enable Roselands' redemption of parcels A, B, and G. Kusick, Valtinson, and Christian retained Eric Brever, of Foster & Brever P.L.L.C. (individually or collectively, Brever), to negotiate and structure the redemption transaction. Brever organized respondent Roseland Acres LLC, whose members included Kusick, Valtinson, and Christian, to enter into the redemption transaction.

On May 5, 2009, Roselands agreed to sell the farmland to Roseland Acres for $420,472.02. The parties do not dispute that May 22 was the last day of the mortgage-foreclosure redemption period for parcels A and B. On May 20 and 21, Roseland Acres deposited $421,000 in escrow with a title company to allow Roselands to redeem parcels A and B from foreclosure and to satisfy the judgment against parcel G and mortgage debt on other parcels. On May 21, Roselands conveyed the farmland to Roseland Acres by warranty deeds and entered into contracts for deed with Roseland Acres to repurchase the farmland. Roselands agreed to make monthly interest payments of $3,508.33 beginning on June 1, 2009, and a balloon payment of $568,350 on June 1, 2012. Around October 2010, Roselands stopped making payments.

In August 2011, Roselands retained Richard Bosse, of appellant Law Offices of Richard E. Bosse Chartered (individually or collectively, Bosse) "to investigate and pre-suit mediat[e]" a legal malpractice claim against Wentzell. Bosse also represented Kenneth Roseland in a criminal case that arose out of a confrontation between Kenneth

3

Roseland and Christian in January 2012. The criminal case ended with Kenneth Roseland's guilty plea to first-degree damage to property.

In late 2011 or early 2012, Roseland Acres provided Roselands notice of cancellation of the contracts for deed. In July 2012, after Roselands failed to make the balloon payment due under the contracts for deed, Roseland Acres notified Roselands that it would evict them from the farmland unless they remedied their defaults on the contracts for deed. Soon after, Roselands, represented by Bosse, sued Wentzell, Roseland Acres, Kusick, Valtinson, and Christian, asserting a variety of claims relating to the redemption transaction (the lawsuit). Roseland Acres asserted counterclaims, including a counterclaim for foreclosure of an equitable mortgage on the farmland; Christian asserted counterclaims against Kenneth Roseland arising out of the January 2012 confrontation; and the district court allowed Roseland Acres, Kusick, Valtinson, and Christian to implead Brever as a third-party defendant on claims that included professional negligence. Bosse represented Roselands throughout the pleading and discovery stages of the lawsuit. But on November 4, 2013, after conflicts over Bosse's fee arose and Roselands refused to sign a fee agreement, Bosse withdrew as Roselands' attorney of record in the lawsuit.

On November 22, 2013, Bosse filed with the Pine County Recorder against parcels A through E notice of claim and intent to hold attorney liens in the amounts of $164,606.07, $134,480.59, and $16,011.70.[2] On November 25, Bosse filed with the

---

[2] The $164,606.07 figure represents Bosse's calculation of the "reasonable value" of unpaid legal services rendered by Bosse in connection with Roselands' redemption-

4

Carlton County Recorder against parcels F and G notice of claim and intent to hold attorney liens in the same amounts. On December 11, Bosse served notice of such claim and intent on Roselands. On December 20, Bosse filed in the lawsuit notice of claim and intent to hold attorney liens upon Roselands' interest in property affected by "this action," along with an affidavit of service of notice of such claim and intent on Roselands. In May 2014, Bosse moved the district court to establish attorney liens in the same amounts against the farmland.

Meanwhile, the lawsuit continued without Bosse. In early 2014, Wentzell moved for summary judgment on Roselands' claims, and Roseland Acres, Kusick, Valtinson, and Christian moved for summary judgment on Roselands' claims, for summary judgment on Roseland Acres's counterclaims, and for decree of foreclosure on an equitable mortgage. The district court granted summary judgment to Wentzell, Roseland Acres, Kusick, Valtinson, and Christian on Roselands' claims; determined that the redemption transaction resulted in an equitable mortgage on which Roselands had defaulted; granted summary judgment to Roseland Acres on its counterclaim for foreclosure of the equitable mortgage; and awarded a decree of foreclosure of the equitable mortgage. Roselands appealed the summary judgment in a companion case. *See*

transaction claims against Roseland Acres, Kusick, Valtinson, and Christian; the $134,480.59 figure represents Bosse's calculation of the "reasonable value" of unpaid legal services rendered by Bosse in connection with Roselands' malpractice claims against Wentzell; and the $16,011.70 figure represents Bosse's calculation of the "reasonable value" of unpaid legal services relating to Bosse's criminal defense of Kenneth Roseland.

*Roseland v. Wentzell*, ___ N.W.2d ___, ___, No. A14-1254, slip op. at 6 (Minn. App. May 18, 2015).

In August 2014, the district court denied Bosse's motion to establish attorney liens against the farmland and subsequently denied two requests by Bosse for leave to move for reconsideration. This appeal follows.

**D E C I S I O N**

The attorney lien "traces its origins to common law, but the Minnesota legislature has long since preempted this field and has substituted statutory procedures." *Dorsey & Whitney LLP, v. Grossman*, 749 N.W.2d 409, 420 (Minn. App. 2008) (quotation omitted); *see also Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Products, Inc.*, 295 N.W.2d 514, 516 (Minn. 1980) (stating that "[a]lthough the attorney's charging lien existed at common law and at equity, it is now wholly governed by statute"). "Interpretation of the attorney-lien statute presents a question of law, which [appellate courts] review de novo." *Grossman*, 749 N.W.2d at 420; *see also Effrem v. Effrem*, 818 N.W.2d 546, 549 (Minn. App. 2012) (stating that "to the extent that the issue requires an interpretation of the [attorney-lien] statute, . . . the applicable standard of review is de novo").

The attorney-lien statute provides in relevant part:

> An attorney has a lien for compensation whether the agreement for compensation is expressed or implied . . . upon the interest of the attorney's client in any money or property involved in or affected by any action or proceeding in which the attorney may have been employed, from the commencement of the action or proceeding . . . .

6

Minn. Stat. § 481.13, subd. 1(a) (2014).[3] "The lien granted under subdivision 1(a), is an inchoate lien[.] . . . To make the lien choate, an attorney may petition the district court to summarily establish the lien." *Grossman*, 749 N.W.2d at 420 (citing Minn. Stat. § 481.13, subd. 1(c)).

On a petition to establish an attorney lien, "the district court must determine (1) the lienholder; (2) the subject of the lien as defined by the attorney-lien statute; and (3) the amount due. The resulting judgment is in the nature of a declaratory judgment that establishes the lien . . . ." *Id.* at 422 (citation omitted). The attorney-lien statute permits only summary establishment—not summary enforcement—of an attorney lien. *Id.* "[E]stablishment of a lien pursuant to section 481.13, subdivision 1(c), enables the attorney to pursue any available methods for foreclosing on a security interest if the client does not satisfy the underlying debt." *Id.* at 421.

In this case, the district court denied Bosse's motion to establish attorney liens, concluding that the summary-judgment order in the lawsuit "fully severed any and all claims of [Roselands] to the real estate at issue" and that the court was "without authority to grant any attorney's lien claim . . . by Attorney Bosse as the terms of the summary judgment order effectively transferred any ownership interest of [Roselands] to Defendant Roseland Acres, LLC." Bosse argues that the court erred in its conclusions. In

---

[3] We apply the most recent version of the statutes in this opinion because the statutes have not been amended in relevant part. *See Interstate Power Co. v. Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 575 (Minn. 2000) (stating that, generally, "appellate courts apply the law as it exists at the time they rule on a case").

consideration of the court's unchallenged determination that the redemption transaction resulted in an equitable mortgage, *see Roseland*, slip op. at 6−7, we agree.

"If an arrangement is an equitable mortgage, the mortgagor . . . has title to the property, has a right to redeem the property after foreclosure, and has a right to the proceeds of the sale that exceed the amount of indebtedness." *United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equip., LLC*, 782 N.W.2d 263, 268 n.3 (Minn. App. 2010), *rev'd in part on other grounds*, 813 N.W.2d 49 (Minn. 2012). If the mortgagor does not redeem the property during the redemption period, the mortgagor's interest in the property terminates and each of the mortgagor's creditors—beginning with the most senior creditor and descending in order of priority—has seven days to redeem the property. Minn. Stat. §§ 580.12, .24(a) (2014).

Here, the district court determined that the redemption transaction resulted in an equitable mortgage against the farmland and that Roselands had defaulted on the equitable mortgage. Accordingly, the court granted summary judgment to Roseland Acres on its counterclaim for foreclosure of the equitable mortgage and awarded a decree of foreclosure. The Carlton County Sheriff sold parcels F and G to Roseland Acres at public auction on December 16, 2014, and the Pine County Sheriff sold parcels A though E to Roseland Acres at public auction on December 18, 2014. Until Roselands' 12-month redemption periods expire, Roselands continue to have title to the farmland, a right to redeem the farmland, and a right to any proceeds of the sheriff's sales of the farmland exceeding the amount of their indebtedness to Roseland Acres. Indeed, the court acknowledged Roselands' 12-month redemption rights in its summary-judgment order.

8

Because Roselands have an interest in the farmland that survived summary judgment in the lawsuit, the district court erred by concluding that such judgment "fully severed any and all claims" of Roselands to the farmland and that the judgment "effectively transferred [to Roseland Acres] any ownership interest" of Roselands in the farmland. Nevertheless, if Bosse did not satisfy the requirements of the attorney-lien statute, this court may uphold the district court's denial of Bosse's motion to establish attorney liens against the farmland. *Cf. Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 728 (Minn. 1990) (stating that "[appellate courts] will not reverse a correct decision simply because it is founded on incorrect reasons"). Those requirements are that (1) the farmland is "property involved in or affected by" the lawsuit; (2) Roselands and Bosse had an expressed or implied agreement for compensation; and (3) Bosse cleared various procedural hurdles discussed in greater detail below. *See* Minn. Stat. § 481.13 (2014) (setting forth requirements to perfect attorney lien). We discuss these requirements in turn.

First, in the lawsuit, Roselands attacked the validity of the redemption transaction involving parcels A through G. The farmland therefore is "property involved in or affected by" the lawsuit. *See* Minn. Stat. § 481.13, subd. 1(a)(2).

Second, the record contains evidence of Roselands' agreement to pay Bosse for legal services rendered in connection with the lawsuit, despite their refusal to sign a fee agreement. An inchoate lien for compensation therefore attached to Roselands' interest in the farmland upon the commencement of the lawsuit. *See* Minn. Stat. § 481.13, subd. 1(a)

(providing that "[a]n attorney has a lien for compensation whether the agreement for compensation is expressed or implied").

Third, within three weeks of withdrawing as Roselands' attorney of record in the lawsuit, Bosse filed notice of claim and intent to hold attorney liens against the farmland with the relevant county recorders. Fewer than 20 days later, Bosse served notice of such claim and intent on Roselands. And about six months after filing notice of claim and intent with the county recorders, Bosse moved to establish attorney liens against the farmland. Bosse therefore met the procedural demands of the attorney-lien statute. *See* Minn. Stat. § 481.13, subds. 2–3 (providing that, to perfect attorney lien on client's interest in real property, (1) "a notice of intention to claim a lien on the property must be filed in the office of the county recorder" no more than 120 days after the last item of claim; (2) the lien "claimant must prepare and deliver a written notice of the filing personally or by certified mail to the owner of the real property" within 30 days of the filing; and (3) the lienholder must "assert[] a lien within one year after the filing").

Bosse satisfied every requirement of the attorney-lien statute. As a result, Bosse is entitled to an attorney lien on Roselands' interest in the farmland in an amount that represents the reasonable value of unpaid legal services rendered by Bosse in connection with the lawsuit.[4] *See Crolley v. O'Hare Int'l Bank*, 346 N.W.2d 156, 159 (Minn. 1984)

---

[4] Bosse conceded before the district court, and concedes on appeal, that any attorney lien is subordinate to Roseland Acres's equitable mortgage. We agree. *See Somsen, Mueller, Lowther & Franta, PA v. Estates of Olsen*, 790 N.W.2d 194, 197 (Minn. App. 2010) (concluding that mortgage had priority over attorney lien where "mortgage was filed and registered several years before the law firm's attorney's lien existed"). The documents effecting the redemption transaction were recorded more than three years before

(stating that "the attorney's charging lien . . . applies only to an attorney's charges for services in connection with the particular action or proceeding involved and not to a client's general account" (quotation omitted)); *Thomas A. Foster & Assocs., LTD v. Paulson*, 699 N.W.2d 1, 6 (Minn. App. 2005) (stating that, absent retainer agreement, "the amount of the lien is determined by the reasonable value of the services rendered").

On remand, the district court must determine the reasonable value of Bosse's legal services and enter "judgment . . . in the nature of a declaratory judgment that establishes the [attorney] lien, as defined by the district court with regard to the lienholder, the subject, and the amount." *See Grossman*, 749 N.W.2d at 422 (stating that, "when a lien claimant petitions the district court under section 481.13, subdivision 1(c), the district court must determine . . . the amount due"); *see also Paulson*, 699 N.W.2d at 4 (stating that "the reasonable value of attorney fees is a question of fact"). The district court also must address whether Bosse's attorney lien should include the reasonable value of unpaid legal services provided by Bosse in connection with Roselands' malpractice claims against Wentzell or the reasonable value of unpaid legal services related to Bosse's criminal defense of Kenneth Roseland. *See Crolley*, 346 N.W.2d at 157−59 (reversing part of district court's order establishing attorney liens for legal services rendered in past proceedings that were related to, but separate from, present action).

**Reversed and remanded.**

---

commencement of the lawsuit and more than four years before Bosse filed and served notice of claim and intent to hold attorney liens.